# Richmond

IRENE COLE CRIDER v. COMMONWEALTH OF VIRGINIA.

November 29, 1965.

Record No. 6064.

Present, All the Justices.

*Guy O. Farley, Jr.* and *J. William Gilliam* (*Kelly, Farley & Lawson*, on brief), for the plaintiff in error.

*Harold V. Kelly, Assistant Attorney General* (*Robert Y. Button, Attorney General*, on brief), for the Commonwealth.

BUCHANAN, J., delivered the opinion of the court.

A grand jury of Fairfax county returned an indictment against Mrs. Irene Cole Crider, charging in five separate counts that she, as an officer or employee of the town of Vienna, in said county, did knowingly misuse or misappropriate public funds or knowingly dispose thereof otherwise than in accordance with law, in violation of § 18.1-110 of the Code of Virginia.

A jury heard the evidence and found her guilty on Counts 2, 3, 4 and 5, and fixed her punishment at one year in the penitentiary on each count. Count No. 1 was struck out by the court in the course of the trial. Defendant was sentenced in accordance with the verdicts, we granted her a writ of error, and she contends here that the trial court erred in overruling her motion to strike the Commonwealth's evidence, in the admission of some of the testimony, and in granting and refusing certain instructions.

Mrs. Crider, who will usually be referred to herein as defendant, had been employed for fourteen years as treasurer of the town of Vienna, and was so employed at the time of the offenses charged in the indictment. These charges were that she did unlawfully and feloniously knowingly misuse or misappropriate or dispose of public funds of the town as follows: May 14, 1963—$230.28; May 31, 1963 —$72.08; June 6, 1963—$42.40, and on the same date also $42.40.

These sums were parts of four payroll checks of the town of Vienna for larger sums, all made payable to the defendant, two signed for the town by the defendant herself and two by the assistant director of finance. Each of these four checks included a sum as pay to the defendant for overtime work on the town budget, in the amounts listed in the indictment, except that the item of $230.28 on May 14, 1963, included only $176 for overtime pay. At the times stated defendant and all other employees of the town worked on the basis of a forty-hour week, and by means of the checks referred to

the defendant obtained payment from town funds for overtime claimed by her for work on the town budget.

The Commonwealth asserted that the taking of these sums by the defendant to pay herself for overtime work was without the authority or the knowledge of the town, as she knew, and that in so doing she knowingly misused or misappropriated these funds or knowingly disposed thereof otherwise than in accordance with law. It introduced evidence in support of its contention to the following effect:

At the time of these events, May and June, 1963, there was in effect what is called the Yarger Plan, after its author, adopted by resolution of the town council in 1962, relating to personnel policies, procedures and compensation of employees, and with which the defendant was entirely familiar. Section 4.7 thereof provided with respect to overtime as follows:

"When a rate of pay has been established for any class of positions, no additional compensation shall be paid for overtime, except that in cases of extraordinary emergency a department head, subject to the approval of the Town Manager, may authorize compensation for overtime work at straight time pay."

The plan included a classification of positions, with salary schedules and provisions for advancement. It provided that the town manager should be responsible for administering the compensation plan for all positions and should be responsible for interpreting the application of the plan to pay problems which were not specifically covered by the resolution.

The town manager in May and June, 1963, was Lillard B. Creswell, who had held that position since 1959. On July 2, 1962, the defendant sent to him a written request for approval of payment to her for eighty-two hours of overtime work on the budget during April, May and June, 1962, and he granted his approval. She had already paid herself for the work, however, before she made the request.

In January, 1963, the town manager sent to all department heads, including the defendant, a letter granting them authority to authorize pay for overtime work when needed, within the limits of the budget, except for work performed by one in a supervisory position, in which case payment therefor would have to be specifically approved by the town manager.

In April, 1963, the town manager wrote to the defendant complimenting her on the performance of her duties and advancing her

to a higher grade of compensation under the compensation plan, with an annual salary of $8,820. Prior thereto her salary had been $8,400. Salaries were paid each two weeks and defendant's check after her promotion was for the gross sum of $339.23.

In the latter part of May or early June, 1963, defendant again presented to the town manager a request for overtime pay for work on the budget in 1963, and the town manager told her he could not approve it. He said he declined to approve it because she was then better paid than in 1962. Prior to making the request she had paid this overtime to herself without his approval and without his knowledge, and in the manner referred to above. A member of the town council testified that so far as he knew the defendant did not disclose to the council that she wanted pay for overtime. An accountant testified that from January 1, 1963, to November 13, 1963, the records showed that the defendant received from the town for salary, annual leave and work on the budget, the sum of $8,988.01.

On April 30, 1963, defendant issued, or caused to be issued, a check of the town for $112.59 payable to Arlington Loans, in payment of or on several personal accounts, one of which was her own for $37.53, and which she did not enter on her payroll account until May 29, 1963.

Defendant testified in her own behalf and introduced two character witnesses. Her testimony was to the effect that she had prepared the town budget for many years, and that she had received pay for overtime work on the budget from at least 1959; that in May and June, 1963, she prepared the material for the budget, as customary, and kept a record of her overtime hours, and took a memorandum of it to the town manager, who told her he would not sign anything for anybody right then. She said she had no further conversation with him about it and he did not return the memorandum to her. He resigned his position on June 30, 1963. She admitted that she had already paid herself for this overtime work when she presented this memorandum.

She testified that she had earned this overtime pay; that it had been a long and well established practice that she would receive extra pay for overtime work on the budget; that her right to have this pay had not been previously questioned and that she acted in good faith and with no purpose or intent of doing wrong. She admitted that she was familiar with the compensation plan known as the Yarger Plan, and with all provisions of it; that as treasurer she was responsible for the collection and disbursement of all town funds

and for the proper accounting for same; that she was considered an official of the town and a department head.

Section 4.7 of the compensation plan, quoted above, prohibited payment to defendant of additional compensation for overtime, except in case of extraordinary emergency, and then subject to the approval of the town manager. Defendant testified, however, that she did not base her claim for overtime pay on the compensation plan, but that she was under the impression that this particular overtime was approved by a State statute which she said she had read. The statute she referred to (Code § 15.1-68) applied only to county officials, not to the defendant in her position as treasurer of the town. Section 18.1-110 of the Code, however, did and does apply to the defendant. It provides:

"If any officer, agent or employee of the State or of any city, town or county or the deputy of any such officer having custody of public funds knowingly misuse or misappropriate the same or knowingly dispose thereof otherwise than in accordance with law, he shall be confined in the penitentiary not less than one nor more than twenty years; and any default of such officer, agent, employee or deputy in paying over any such funds to the proper authorities when required by law to do so shall be deemed prima facie evidence of his guilt."

The evidence introduced was sufficient to make the issue of whether the defendant had violated this statute a question for the jury to decide, and no error was committed by the trial court in overruling the motion of defendant to strike out the Commonwealth's evidence.

Neither was there error in admitting into evidence the Yarger Plan, or the testimony with respect to other acts of the defendant in paying herself for overtime. The compensation plan determined the amount, times and character of the compensation to be paid to all town employees, including the defendant; and defendant's other acts were admissible as bearing on the question of her knowledge and pattern of conduct. *Colvin* v. *Commonwealth*, 147 Va. 663, 669-70, 137 S. E. 476, 478; *Boyd* v. *Commonwealth*, 156 Va. 934, 944, 157 S. E. 546, 550; 22A C.J.S., Criminal Law, § 685, p. 760. Defendant complains that the court failed to instruct the jury that this evidence was limited to showing intent. She relied on these acts herself in her defense, and even if she had been entitled to a limiting instruction she waived the right by not requesting it. *Roy* v. *Commonwealth*, 191 Va. 722, 728, 62 S. E. 2d 902, 905.

■ Over the objection of the defendant the court gave to the jury Instruction No. 3. It told the jury that if during May and June, 1963, while the defendant was treasurer of the town, she wrote or caused to be written the checks set out in the indictment, "knowing that such expenditures of public funds were not authorized by the Council of the Town of Vienna, or its town manager," they should find her guilty. The evidence was without conflict that these expenditures were not authorized by the council of the town or by its town manager. Consequently, this instruction in effect was a direction to the jury to find the defendant guilty. It was not in accord with the language or the meaning of the statute.

The statute, § 18.1-110, which the defendant was charged with violating, as noted above, makes it a crime for the described person having custody of public funds to "*knowingly* misuse or misappropriate the same or *knowingly* dispose thereof otherwise than in accordance with law." (Emphasis added.) The essence of the crime is the scienter, the guilty knowledge of the defendant that these payments obtained by her for overtime were a misuse or misappropriation of public funds, or a disposition of them not in accordance with law.

In *Robinson* v. *Commonwealth*, 104 Va. 888, 52 S. E. 690, a justice of the peace was indicted on the charge that he had the custody of five dollars of public funds of the State and that he "feloniously and knowingly did misuse and misappropriate" the same, and did feloniously and knowingly dispose thereof otherwise than by paying it to the clerk of the court in accordance with law. The prosecution was under § 3717 of the Code of 1887 as amended (Code 1906, § 3717), which is now § 18.1-110. In affirming defendant's conviction the court said:

"* * It is true that the detention of the money is one of the elements constituting the offense punished under section 3717, but it does not constitute the offense itself; for money may be detained without being misappropriated, which is the evil for which section 723 was designed as a remedy. But it may also be detained with fraudulent and felonious intent to misuse and misappropriate, which brings the case within the terms of section 3717."

The court said further that an instruction to the jury that if the defendant "knowingly misused or misappropriated the same [money], or knowingly disposed thereof otherwise than in accordance with the law, it is the duty of the jury to find him guilty," was a correct statement of the law as set out in the statute.

While the detention of public funds may be done with fraudulent intent, the latter is not a necessary element of the offense created by § 18.1-110. That section says that if the forbidden act or acts are done "knowingly," a violation occurs. The proof required is that the defendant used or disposed of the public funds in her charge knowing that such use or disposition was a misuse or misappropriation of the funds or not in accordance with the law.

In *People* v. *Dillon*, 199 Cal. 1, 248 P. 230, a city official used the city's privileges in purchasing goods for others and paid for them with city warrants which were later reimbursed to the city by the beneficiaries. He was convicted of violating a California statute which made it a felony for an official having custody of public funds to appropriate same to his own or another's use, or to use the same for any purpose not authorized by law. His conviction was affirmed by the court in an opinion which included the following:

"* * No one will deny the power or right of the legislature to provide that embezzlement of public monies is committed by a public officer when he uses public funds in a manner forbidden by law, even though he may have no fraudulent intent when he does so. To render a person guilty of crime it is not essential to a conviction that the proof should show such person to have entertained any intent to violate law * * it is sufficient that he intentionally committed the forbidden act."

"* * [I]f appellant's argument [that proof of criminal intent was essential] is sound, it is no offense for a public officer to use public money for private purposes ad libitum if there exists no fraudulent intent. In the face of the many statutes enacted for protecting and safeguarding the revenue of the state and the declared policy of the whole scheme of legislation such a contention is rather appalling."

*State* v. *Cahill*, 208 Ore. 538, 293 P. 2d 169; *Garner* v. *State*, 229 Ala. 600, 158 So. 546; and *Hunter* v. *State*, 158 Tenn. 63, 12 S.W.2d 361, all express similar views.

Section 18.1-110 deals with public officials in possession of public funds and requires that they do not knowingly misuse or misappropriate such funds, or knowingly use them in a way not in accordance with the law, regardless of whether they were prompted by a criminal intent.

The giving of Instruction No. 3 was error for which the judgment below must be reversed.

The refusal of the trial court of instructions offered by the defendant that the Commonwealth must prove an intent on the part of the defendant to defraud was not error. There was also no error in refusing Instruction E as to how the jury should resolve conflicts in the evidence; or in refusing Instruction G, relating to the presumption of innocence and reasonable doubt, principles which were sufficiently and more accurately stated in other instructions.

Instruction D, which was given for the defendant without objection, told the jury that before they could convict the defendant they must believe beyond a reasonable doubt that she feloniously and knowingly misused or misappropriated the funds, or some part thereof, mentioned in the indictment, "that is, that she did so with a criminal intent, and not under an honest belief that she had a *bona fide* claim of right to do so." On a retrial such an instruction should not include the clause requiring proof of criminal intent.

For the reasons stated the judgment of conviction appealed from is reversed and the case is remanded for a new trial.

*Reversed and remanded.*