### Salem
## MARSHALL W. ORR, a/k/a "MARTY" ORR
### v.
## COMMONWEALTH OF VIRGINIA
No. 0202-85

Decided June 3, 1986

COUNSEL

R. Wayne Austin; Joseph P. Johnson, Jr. (Johnson, Scyphers & Austin, P.C., on brief), for appellant.

Thomas C. Daniel, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—Appellant, Marshall W. Orr, challenges the sufficiency of the evidence which resulted in her conviction for embezzlement of funds from the Washington County Treasurer's Office between July 1 and December 9, 1983. We find the evidence sufficient to support the conviction, and affirm.

Orr was employed as a deputy treasurer and designated bookkeeper in the Washington County Treasurer's Office. She was responsible for computing each day's revenue and posting it on a daily cash book or general ledger. The office had six employees, including the Treasurer and Orr. All employees had access to the cash drawer. The office operated under a "deposit intact" system whereby all funds received were deposited on a daily basis except for a specified cash sum retained to handle the next day's transactions. At the conclusion of each workday, an employee would total the cash and checks collected that day. In addition, the amount of the receipts for that day would be totaled on an adding machine tape. These two figures would then be reconciled in what the office employees referred to as the "little black book." The receipts were posted to the general ledger. Bank deposits were made in the amount of total receipts, minus the specified cash sum retained for use the following day.

An audit of the Treasurer's office for the period July 1, 1983, to December 31, 1983, revealed that deposits were less than receipts in the aggregate amount of $2,280.05. Specifically, the auditor compared the daily deposits to the daily receipt tapes, and determined that receipts exceeded deposits for the dates July 11, November 2, November 7, November 14, November 18, November 23, November 28, November 30, December 5 and December 9. The auditor testified that more money was taken into the office than was deposited on these days.

It is well settled that on appeal we view the evidence in the light most favorable to the Commonwealth. *Higginbotham* v. *Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975); *Sutphin* v. *Commonwealth*, 1 Va. App. 241, 243, 337 S.E.2d 897,

898 (1985). The evidence in this case involves two different types of transactions. The July 11 shortage is related to monies received from building permits and zoning fees. The other nine shortages involve monies received from real estate tax payments made during November and December 1983.

### The July 11 Shortage

A secretary from the Washington County Building Inspector's Office took $4,468.00 in cash and checks to the Treasurer's Office on July 11, 1983. This amount represented monies received from building permits and zoning fees. Chief Deputy Treasurer Charles Barr received the monies, ran an adding machine tape to confirm the total, and signed the last page of the Building Inspector's "Report of Collections," acknowledging receipt of $4,468.00. Barr testified that the bookkeeper counted the receipts at the end of the day, while Barr added up the cash and checks collected. Orr, who stipulated that she served as bookkeeper on July 11, entered the receipts on the general ledger. The receipts from the Building Inspector's Office were entered as $4,288.00, not the correct amount of $4,468.00. Barr entered the total of the cash and checks in the "little black book," and affixed his initials next to this amount. Underneath, he entered the total of the receipts as reported by Orr. These two figures reconciled in the amount of $12,763.57. One thousand dollars was kept in the office to handle the following day's business, and a deposit of $11,763.57 was made in the bank.

Subsequently, the audit revealed that the total receipts exceeded the July 11 deposit by $180.00. The auditor took into account the $1,000.00 retained in the office. The inescapable conclusion from these findings is that Orr deliberately entered the $4,468.00 receipt from the Building Inspector's Office as $4,288.00 on the general ledger, and removed $180.00 from cash receipts during the day, thus giving the appearance that total receipts for the day reconciled with the total of cash and checks. This scheme was not uncovered until the audit was made, and the July 11 receipts and ledger entries were scrutinized in detail. Orr, serving as bookkeeper, was the only employee in a position to make the false entry on the general ledger. Thus, the jury had ample evidence to find that Orr embezzled $180.00 on July 11, 1983.

### The November-December Shortages

The other shortages contributing to the total deficit of $2,280.05 involved real estate tax receipts for nine days in the months of November and December 1983. Orr stipulated that she made the entries into the general ledger for the nine days in question. Throughout this two month period, real estate taxes were paid in person and through the mail. The clerk would collect the money, place it in the cash drawer, and place the receipt on a spike at the clerk's window. At the end of the day, the clerk would add the cash and checks. The bookkeeper (stipulated to be Orr for the nine days in question) would collect and total the receipts by use of an adding machine, posting the receipts on the general ledger.

The audit revealed that, for the nine days in question, receipts exceeded deposits. Specifically, one or two receipts on each day were not correctly entered on the adding machine tape. The total on the adding machine tape went to make up the general ledger entry. The discrepancies were as follows:

November 2  -  $390.00 receipt entered as $90.00 ($300.00 shortage)

November 7  -  $1,873.50 receipt entered as $1,473.50 ($400.00 shortage)

November 14  -  $453.20 receipt entered as $253.20 ($200.00 shortage)

November 18  -  $347.50 receipt entered as $247.50 ($100.00 shortage)

November 23  -  $100.00 receipt not entered ($100.00 shortage)

November 28  -  $392.50 receipt entered as $92.50, and $89.55 receipt entered as $89.50 ($300.05 shortage)

November 30  -  $110.00 receipt entered as $10.00 ($100.00 shortage)

December 5  -  $395.50 receipt entered as $95.50 ($300.00 shortage)

December 9  -  $968.00 receipt entered as $668.00 ($300.00 shortage).

For each of the nine days, the reconciled amount in the "little black book" equaled the amount deposited, with the specified

amount in cash left in the office. Thus, the conclusion is inescapable that Orr made deliberate false entries on the adding machine tape, which resulted in false entries on the general ledger. By virtue of her position, Orr was the only employee in the office who knew or could have known the difference between receipts and deposits. Thus, the jury had ample evidence to find that Orr embezzled that difference.

Orr relies on *Webb* v. *Commonwealth*, 204 Va. 24, 129 S.E.2d 22 (1963), in arguing that the Washington County Treasurer's Office was so lacking in internal controls that no conviction for embezzlement can be sustained. There are, however, marked differences between *Webb* and the instant case. Webb was convicted for embezzling funds from her employer. The Supreme Court reversed the conviction, noting deficiencies in the employer's bookkeeping structure.

> There was a glaring weakness in the system of the internal control. All of the employees of the office received payments on accounts, made change from the cash drawer, borrowed money from it, and cashed their own checks and those of customers out of the cash drawer. Four persons connected with the firm knew the combination of the safe. Some entries were made in the books by persons other than the defendant. Incidental expenses of the firm were paid out of the daily receipts from the cash drawer, and under the system set up by Whiteside [the employer's business consultant] no records, which could be audited, were kept of those expenses. Hence under this system all receipts were not deposited in the bank. This could account for the difference between receipts and deposits and the amount of cash on hand. It is impossible to establish a shortage of funds for which the defendant would be responsible without a detailed audit of the firm's books showing all receipts and disbursements.

*Id.* at 35, 129 S.E.2d at 30.

The bookkeeping structure in *Webb* is not analogous to the present case. Here, the Washington County Treasurer's Office followed the "deposit intact" system whereby monies received were deposited on a daily basis. One thousand dollars, $2000.00 or $3,000.00 was kept on hand in the office for use in the following day's business. The amount fluctuated as the anticipated volume

of business increased or decreased. The amounts kept on hand were accurately accounted for. Additionally, there is no evidence, as there was in *Webb*, that employees or customers had access to the cash drawer for the purpose of cashing personal checks, borrowing money, etc. Finally, the audit revealed eleven specific instances (the November 28 shortage was a result of two false entries) in which receipts were falsely entered on either the general ledger or the adding machine tape which went to make up the general ledger entry. The amount of the shortages (e.g. $100.00, $300.00) indicates deliberate steps were taken to falsify the records and embezzle funds. As the evidence demonstrates, Orr was the only individual in a position to do this. Furthermore, we note that the Commonwealth's case is strengthened by the repeated and numerous instances of false entries. *Challenor* v. *Commonwealth*, 209 Va. 789, 792, 167 S.E.2d 116, 118 (1969). The evidence is clear that the shortages were the result of deliberate acts, not sloppy bookkeeping as was the case in *Webb*.

*Affirmed.*

Coleman, J., and Moon, J., concurred.