455 S.E.2d 259

**Arvil Ray RATLIFF**

**v.**

**COMMONWEALTH of Virginia.**

**Record No. 1903–93–3.**

Court of Appeals of Virginia,
Salem.

March 21, 1995.

44

Carl E. McAfee (McAfee, Bledsoe & Associates, P.C., on brief), for appellant.

Thomas C. Daniel, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on brief), for appellee.

Present: MOON, C.J., and BARROW and COLEMAN, JJ.

## OPINION

MOON, Chief Judge.

Appellant, Arvil Ray Ratliff (Ratliff), was convicted in a jury trial in Buchanan County of felonious misuse of public funds in his custody, a violation of Code § 18.2–112. On appeal, Ratliff contends the evidence was insufficient to prove a violation of Code § 18.2–112 because he did not have custody of the funds allegedly embezzled. We hold that because the Commonwealth failed to show that Ratliff had custody of the funds within the meaning of the statute, the evidence was insufficient to prove a violation of Code § 18.2–112. Accordingly, we reverse Ratliff's conviction.

In October, 1990, Ratliff, who was a member of the Board of Supervisors, signed and submitted a mileage voucher for payment for 2,196 miles he claimed to have traveled during the months of July, August and September.[1] Vouchers, like the one submitted by Ratliff, were prepared by a county clerk and were generated by a computer according to a system under which all board members were credited for mileage within a specified minimum and maximum that was set forth on a Rolodex card. The system specified that vouchers were to be submitted to the board for approval by a vote of the entire board, after which the board's bookkeeper prepared a warrant for payment. The warrant would then be signed by the County Administrator on behalf of the board and submitted to the County Treasurer. The County Treasurer would then issue a check payable to the board member.

At trial, the evidence proved that the reimbursement check made out to Ratliff pursuant to his mileage voucher was drawn on the Buchanan County general fund. Ratliff had no authority over the account and could not remove funds from it. The County Treasurer had custody of the funds and maintained the account. The Treasurer's signature was necessary to make the check negotiable. Although the Treasurer could

---

1. This case arises out of Ratliff's submission of these vouchers and his obtaining of funds as reimbursement for travel.

not draw on county funds unless the Board of Supervisors had made an appropriation, the board itself could not withdraw funds from the account.

At the close of all of the evidence, Ratliff moved for acquittal of the charge under Code § 18.2–112 because, he argued, he did not have custody of the county funds. The trial judge overruled Ratliff's motion, finding that the statute did not require the "funds to come into the hands of the person who is charged with the misappropriation of funds."

▇▇ Notwithstanding the trial court's interpretation of the statute, which is basically correct as a matter of law, we hold that Ratliff did not have custody of the county funds because he had neither the authority to draw checks on the account nor the authority to cause checks to be drawn on the account.

▇▇ Code § 18.2–112, which is entitled, "Embezzlement by officers, etc. of public or other funds," provides in pertinent part:

If any officer, agent or employee of the Commonwealth or of any city, town, county, or any other political subdivision, or the deputy of any such officer *having custody of public funds,* or other *funds coming into his custody* under his official capacity, knowingly misuse or misappropriate the same or knowingly dispose thereof otherwise than in accordance with law, he shall be guilty of a Class 4 felony. . . .

(Emphasis added.) An essential element of Code § 18.2–112 is the custody of the funds that are misappropriated. As with other embezzlement statutes, Code § 18.2–112 emphasizes the conversion of property by someone in a position of trust who, by virtue of his or her position, exercises control over the property converted or has custody of the property. *See* Code § 18.2–111.[2]

---

**2.** Embezzlement is the fraudulent appropriation of property by one lawfully entrusted with its possession. Two of the elements of embezzlement are that there must be a relationship such as that of employment or agency between the owner of the money and the defendant and that the money alleged to have been embezzled must have come into

■ While the term "custody" is not expressly defined within the statute, case law supports the proposition that it is not limited to cases of actual possession. *See Crider v. Commonwealth,* 206 Va. 574, 145 S.E.2d 222 (1965).[3] However, if a person charged with an offense under Code § 18.2–112 does not physically possess the property, the term custody requires proof that the person had the authority to dispose of or distribute the funds.[4]

In *Crider,* a town treasurer was convicted under the predecessor of Code § 18.2–112 because she paid herself for overtime work without approval of the town manager according to the town personnel plan with which she was familiar. These expenditures were not authorized by the council of the town or by its city manager. The amounts of unauthorized overtime pay were included in four payroll checks, all made payable to the defendant, two signed by the defendant and two by the assistant director of finance. *Id.* at 575–76, 145 S.E.2d at 223–24. While the Supreme Court did not specifically address the issue of custody, it held that the evidence introduced was sufficient to submit to the jury the issue of whether the defendant violated the statute. *Id.* at 578, 145 S.E.2d at 225. Thus, because the defendant in *Crider* caused funds to be paid to her without authority by means over which she had control, the town payroll, she was guilty of an offense under Code 18.2–112 even though she did not physically possess the funds.

---

the possession of the defendant by virtue of that relationship. *See Black's Law Dictionary* 522 (6th ed. 1990).

**3.** There are other embezzlement cases affirming convictions under Code § 18.2–112 or its predecessors which have dealt with defendants who were in physical possession of public funds. *See Robinson v. Commonwealth,* 104 Va. 888, 52 S.E. 690 (1906) (justice of peace who was paid a fine but failed to pay it over to the county was found guilty of embezzlement); *Orr v. Commonwealth,* 2 Va.App. 371, 344 S.E.2d 627 (1986) (employee of county treasurer's office who stole cash under her supervision and control was properly convicted of violating Code § 18.2–112).

**4.** Custody is generally defined as having the care and control of a thing. *See Black's Law Dictionary* 384 (6th ed. 1990).

However, the present case is unlike *Crider* and the other cases cited in note 3, *supra*, because Ratliff had neither physical possession of the funds nor control over the means with which to dispose of or disperse the funds. Ratliff, as a member of the Board of Supervisors, had no personal control over the general fund from which he received the reimbursement for his mileage voucher. Ratliff could not draw funds from the general fund account, nor could he, himself, cause a member of the Treasurer's office to write checks on the account. At best, the Commonwealth's evidence proved that Ratliff fraudulently submitted vouchers to the Board of Supervisors, whose approval was necessary for the reimbursement check to be issued.

Even if we were to hold as the Commonwealth urges that Ratliff's misappropriation of funds under Code § 18.2–112 could have been accomplished through a joint act of the Board of Supervisors and the Treasurer's office, we would be precluded from affirming Ratliff's conviction. Although the Treasurer's authority may have been limited to converting the warrant (already prepared by the board's bookkeeper) to a negotiable check, and the board could be considered the decision-maker, having the discretion to approve certain expenditures of funds, *see* Code § 15.1–547, these facts do not negate the fact that the Board of Supervisors is an entity in itself, separate and apart from the individuals who compose it. *See Campbell County v. Howard & Lee*, 133 Va. 19, 59, 112 S.E. 876, 888 (1922); *Manly Manufacturing Co. v. Broaddus*, 94 Va. 547, 552, 27 S.E. 438, 440 (1897). Therefore, Ratliff, as an individual member of the board, did not have custody of the funds even if the board's control amounted to "custody" under Code § 18.2–112.

Thus, because Ratliff did not have custody of the public funds he allegedly embezzled, the evidence presented by the Commonwealth was insufficient to sustain his conviction for violating Code § 18.2–112.

*Reversed.*