Present:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and
Agee, JJ., and Carrico, S.J.

ROBYN GUNN

v.  Record No. 052242  OPINION BY JUSTICE CYNTHIA D. KINSER
                                    November 3, 2006
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Robyn Gunn[1] was convicted in a bench trial in the

Circuit Court of Southampton County of knowingly misusing

or misappropriating funds that came into her custody and

possession by virtue of her position as an employee of the

City of Franklin School System in violation of Code § 8.2-

112.[2]  In Gunn's subsequent appeal to the Court of Appeals,

a single judge denied her petition for appeal.  Gunn v.

Commonwealth, Record No. 2580-04-1 (June 9, 2005).  For the

reasons stated in that order, a three-judge panel of the

Court of Appeals also denied Gunn an appeal.  Gunn v.

---

[1] At trial, Gunn testified that her name was "Robyn
Gunn Robertson."  However, she was indicted, convicted, and
sentenced under the name of "Robyn Gunn."

[2] Code § 18.2-112 states, "If any officer, agent or
employee of the Commonwealth or of any city, town, county,
or any other political subdivision, or the deputy of any
such officer having custody of public funds, or other funds
coming into his custody under his official capacity,
knowingly misuse or misappropriate the same or knowingly
dispose thereof otherwise than in accordance with law, he
shall be guilty of a Class 4 felony; and any default of
such officer, agent, employee or deputy in paying over any
such funds to the proper authorities when required by law
to do so shall be deemed prima facie evidence of his
guilt."

<u>Commonwealth</u>, Record No. 2580-04-1 (Oct. 3, 2005). Gunn now appeals from the judgment of the Court of Appeals. Because we conclude the evidence was sufficient to establish Gunn had possession of funds that came into her custody by virtue of her official position and that she knowingly misused or misappropriated the funds, we will affirm the judgment of the Court of Appeals.

## RELEVANT FACTS[3]

Gunn was employed as a teacher at Franklin High School. As part of her duties at the school, Gunn coached the varsity cheerleading squad and consequently worked "in conjunction with" the athletic director and bookkeeper to sell advertisements in the school's football program to local businesses and organizations. Upon collecting payment for an advertisement, Gunn was supposed to record in a receipt book the name of the purchasing organization or business and the amount of the advertisement. Gunn was then required to turn in the money received, along with the receipt, to the school's bookkeeper.

One of the advertisements Gunn sold was to Paul D. Camp Community College (the College). Gunn did not collect

---

[3] In accordance with the well-established principles of appellate review, we will recite the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party before the circuit court. <u>Burns v. Commonwealth</u>, 261 Va. 307, 313, 541 S.E.2d 872, 877 (2001).

2

any money from the College when she sold the $30 advertisement in the 2002 football program but agreed that the College would be billed later. Before an invoice was sent to the College, Gunn received a check in her school mailbox from the Commonwealth of Virginia in the amount of $30.00, upon which the words, "Paul D[.] Camp Community College" were printed in small type. The check was made payable to Franklin High School, and the phrase "C/O Robin Gunn" appeared immediately below the school's name. Gunn indorsed the check using her individual name and deposited it in her personal account at a credit union instead of turning it over to the school bookkeeper.

Subsequently, the school athletic director, using a list compiled by Gunn, sent invoices to purchasers of advertisements who had not paid. The College received such an invoice and informed Franklin High School that it had already paid for its advertisement in the football program. The College also provided a copy of its cancelled check. Gunn's indorsement appeared on the back of the check. Upon examining Gunn's receipt book and determining that it contained no corresponding entry for the $30 payment from the College, the Franklin High School principal reported the matter to the school system's superintendent.

In a meeting with school officials, Gunn admitted she had cashed the check and offered to repay the $30. During questioning by a City of Franklin police officer, Gunn stated she "thought the check was hers" and that it was a "reimbursement check" received in connection with classes she was taking at the College through Old Dominion University. Gunn also acknowledged to the police officer that she had not recorded the sale of the football-program advertisement to the College in her receipt book.

At trial, Gunn testified she had received the check in her school mailbox and thereafter deposited it in her account at the credit union. Gunn gave this explanation for her actions:

> I didn't know what it was. [The check] just came to me, it was a Commonwealth of Virginia check. It . . . looked like something you'd get from your tax return. And it didn't say why I was receiving it. And so I just cashed it. I just assumed – at the time I had been taking classes at Paul D. Camp. I just assumed that maybe I had overpaid my tuition.

In her defense, Gunn sought to introduce several checks drawn on her personal bank account to establish that she had expended her own funds to purchase items for her students and cheerleaders. Gunn claimed such expenditures negated any suggestion that she would "steal $30 from the school system." Finding the evidence not relevant, the

4

circuit court sustained the Commonwealth's objection to the admission of the checks.

On cross-examination, Gunn acknowledged the check in question was made payable to Franklin High School and that she fully understood the letters "C/O" on the face of the check meant "care of." Gunn further admitted the check came into her possession via her school mailbox and not at her home address, and that her signature appeared on the indorsement line on the back of the check. Finally, Gunn stated that, when the check was presented to her, she "realized that it obviously wasn't something that was supposed to be for me."

At the close of the Commonwealth's case-in-chief and at the close of all the evidence, Gunn moved to strike the evidence. In denying the motions, the circuit court reasoned that "[t]he proof required is that the defendant used or disposed of the public funds in her charge knowing that such use or disposition was a misuse or misappropriation of the funds or not in accordance with the law." The circuit court further found "there was a knowing use of these funds for misappropriation when those funds were deposited into [Gunn's] checking account." Thus, the circuit court found Gunn guilty and sentenced her to incarceration for a term of two years, which the court

suspended, placing Gunn on supervised probation for a period of two years.

In denying Gunn's petition for appeal, the Court of Appeals concluded Gunn had custody of the funds because she actually possessed the check, indorsed it, and kept the $30 when she cashed the check. Gunn v. Commonwealth, Record No. 2580-04-1, slip op. at 2 (June 9, 2005). The Court of Appeals also concluded the circuit court could reasonably infer, from the evidence presented, that Gunn knowingly misappropriated the funds. Id. at 3.

ANALYSIS

On appeal, Gunn challenges the sufficiency of the evidence to sustain her conviction and the circuit court's refusal to admit the checks drawn on her personal bank account. We will address the issues in that order.

With regard to the sufficiency of the evidence, Gunn first argues that the Commonwealth failed to prove that she had custody of funds belonging to or under the control of the City of Franklin School System. Gunn asserts that, by merely having possession of the check payable to Franklin High School, she did not have custody of funds belonging to Franklin High School. Citing Code § 8.3A-403(a), Gunn further reasons that her indorsement of the check was ineffective to cause the drawer's funds to be paid by the

6

drawee (the payor bank) and that no funds of Franklin High School were implicated because there was never a proper indorsement of the check. We do not agree with Gunn's argument.

As the Commonwealth points out, Gunn's position ignores the plain language of Code § 18.2-112. The statute makes it a Class 4 felony for "any . . . employee of . . . any city, town, county, or any other political subdivision, . . . having custody of public funds, or other funds coming into his custody under his official capacity [to] knowingly misuse or misappropriate the same or knowingly dispose thereof otherwise than in accordance with law." Code § 18.2-112 (emphasis added). In light of the emphasized language, the Commonwealth was not required to prove that Gunn had possession of public funds or funds belonging to Franklin High School. Nor did the indictment in this case charge Gunn with knowingly misusing or misappropriating the funds of Franklin High School.

Instead, the provisions of Code § 18.2-112 are in the disjunctive and plainly encompass two distinct situations – when a public employee has custody of public funds or when a public employee comes into custody of "other funds . . . under his official capacity." The evidence in this case established Gunn's conduct violated the latter portion of

7

the statute.  Gunn was an employee of the City of Franklin School System.  The check for payment of the College's advertisement in the football program came into her custody in her official capacity as a teacher and cheerleading coach at Franklin High School, and she received the check in her school mailbox.  Her official duties required her to turn the check over to the school bookkeeper.  When she failed to do so but instead indorsed the check and deposited it into her personal account at the credit union, she misappropriated the funds represented by the check.  Those funds were "other funds" within the meaning of Code § 18.2-112.  Whatever legal effect Gunn's unauthorized indorsement of the check had under the provisions of the Uniform Commercial Code is irrelevant.  While the provisions of Code § 18.2-112 clearly apply only to certain public officers, agents and employees, the statute just as clearly addresses not only custody of public funds but also "other funds" that come into the custody of those public officials in their official capacity.

Although penal statutes are to be strictly construed against the Commonwealth, Harward v. Commonwealth, 229 Va. 363, 365, 330 S.E.2d 89, 90 (1985), courts are nevertheless bound by the plain meaning of unambiguous statutory language and "may not assign a construction that amounts to

8

holding that the General Assembly did not mean what it actually has stated." Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); accord Alger v. Commonwealth, 267 Va. 255, 259, 590 S.E.2d 563, 565 (2004). Furthermore, "the plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)(citing Tiller v. Commonwealth, 193 Va. 418, 420, 69 S.E.2d 441, 443 (1952)). To adopt Gunn's position in this case would be tantamount to deleting the language in Code § 18.2-112 stating "or other funds coming into [the public employee's] custody under his official capacity."

Gunn, nevertheless, cites the decision in Ratliff v. Commonwealth, 20 Va. App. 43, 455 S.E.2d 259 (1995), as controlling authority for the proposition that the Commonwealth had to prove she had possession of funds belonging to Franklin High School. There, the defendant, Arvil Ray Ratliff, was convicted of misusing public funds in his custody in violation of Code § 18.2-112. Id. at 45, 455 S.E.2d at 259. Acting in his capacity as a member of the Buchanan County Board of Supervisors, Ratliff signed and submitted a voucher for mileage expenses he allegedly incurred over a period of several months. Id. at 45, 455

9

S.E.2d at 260. The reimbursement check Ratliff eventually received was issued by the county treasurer and was drawn on the Buchanan County general fund. Id. The evidence showed that Ratliff had no authority over that account and could not withdraw funds from it. Id.

The issue on appeal was whether the evidence was sufficient to prove that Ratliff had custody of the funds within the meaning of Code § 18.2-112. Id. at 46, 455 S.E.2d at 260. The Court of Appeals concluded "Ratliff did not have custody of the county funds." Id. The Court of Appeals reasoned that Ratliff "had neither physical possession of the funds nor control over the means with which to dispose of or [disburse] the funds" because he did not have personal control over the county's general fund account upon which his reimbursement check was drawn, he could not draw funds from that account, and he could not cause a check to be written on the account. Id. at 48, 455 S.E.2d at 261. In reaching its decision, the Court of Appeals explained that, if a person charged with violating Code § 18.2-112 does not have physical possession of the funds at issue, "the term custody requires proof that the person had the authority to dispose of or distribute the funds." Id. at 47, 455 S.E.2d at 261.

Ratliff is inapposite to the case at bar. There is no question here that Gunn, unlike Ratliff, had "custody" both of the $30 check and the funds represented by it. The issue raised by Gunn is whether the Commonwealth proved the funds in her custody were public funds or funds of Franklin High School. As we have already explained, the Commonwealth had to prove only that Gunn had custody of "other funds" by virtue of her official capacity.[4]

In her challenge to the sufficiency of the evidence, Gunn also argues that the Commonwealth failed to prove that she knowingly misused or misappropriated the funds at issue, i.e., that Gunn disposed of the funds knowing both that they belonged to Franklin High School and that her disposition of the funds was improper and not in accordance with law. Gunn asserts that the Commonwealth presented no evidence inconsistent with her claim of mistake. Relying on Whitlow v. Commonwealth, 184 Va. 910, 37 S.E.2d 18 (1946), Gunn further contends that the circuit court had to

---

[4] Gunn's reliance on Gardner v. Commonwealth, 262 Va. 18, 546 S.E.2d 686 (2001), is also misplaced. The issue there was whether money obtained by false pretenses was the property of a bank or property belonging to the defendant's grandfather as alleged in the indictment. Id. at 19-20, 546 S.E.2d at 686-87. As already stated, the indictment in the case at bar did not allege that Gunn misappropriated funds belonging to Franklin High School.

consider "factors other than the check itself" in determining whether she had the requisite scienter.

In Crider v. Commonwealth, 206 Va. 574, 145 S.E.2d 222 (1965), the defendant was convicted of knowingly misusing or misappropriating public funds in violation of Code § 18.1-110, the predecessor statute to Code § 18.2-112. Id. at 575, 145 S.E.2d at 223. We discussed the criminal intent necessary to sustain the conviction and explained, "While the detention of public funds may be done with fraudulent intent, the latter is not a necessary element of the offense created by § 18.1-110." Id. at 580, 145 S.E.2d at 226. A public official need not be "prompted by a criminal intent" in order to violate the statute. Id. at 580, 145 S.E.2d at 227. Instead, the proof required to establish a "knowing" misuse or misappropriation was "that the defendant used or disposed of the public funds in her charge knowing that such use or disposition was a misuse or misappropriation of the funds or not in accordance with the law." Id.

Viewed in the light most favorable to the Commonwealth, the evidence and all reasonable inferences drawn therefrom establish that Gunn possessed the requisite intent under Code § 18.2-112. Her own testimony showed that she acted knowingly in her misuse or misappropriation

12

of the funds at issue.  Gunn admitted the check was made payable to Franklin High School and that she understood the meaning of the phrase "C/O Robin Gunn" on the face of the check.  Gunn initially stated she thought the check was either a tax refund or a tuition reimbursement, but she later admitted that she knew it was neither.  As the circuit court noted, Gunn's recognition that the check was payable to Franklin High School is inconsistent with her initial assertion that she assumed the check was a tax refund or tuition overpayment.  Furthermore, she received the check in her school mailbox, not at her home address, and never recorded the payment from the College for its advertisement in her receipt book.  Contrary to Gunn's argument, the circuit court considered several factors in addition to the check itself in deciding that she knowingly misused or misappropriated the funds.  While "[t]here can be no embezzlement where the property is taken 'under an honest belief that . . . the accused had a bona fide claim of right to do so,' " Whitlow, 184 Va. at 918, 37 S.E.2d at 21 (citation omitted), no evidence in the case at bar shows Gunn had an honest belief that she had a bona fide claim of right to the $30 check.

Our conclusion that Gunn knowingly misused or misappropriated the funds is not altered by the fact she

13

included the College on the list of businesses that had not paid for their advertisements in the football program or because the check arrived unexpectedly in her school mailbox before an invoice was sent to the College. This evidence created factual and credibility issues the circuit court had to resolve as the fact-finder in this case. See Mercer v. Commonwealth, 259 Va. 235, 242, 523 S.E.2d 213, 217 (2000) (within the province of the fact-finder to assess credibility of witnesses). The factual determinations of the circuit court, like those of a jury, are binding on this Court unless they are plainly wrong or without evidence to support them. Id. at 243, 523 S.E.2d at 217. We cannot say that the circuit court's conclusion that Gunn acted "knowingly" was plainly wrong or without evidence to support it.

Finally, Gunn assigns error to the circuit court's refusal to admit her personal checks showing expenditures on behalf of her students and cheerleaders. On appeal, Gunn asserts the checks were admissible to show that she was "in the specific habit of spending her personal funds for the benefit of her students and the school system . . . thus bearing upon the issue of the credibility of her defense of mistake." The record, however, shows that at trial Gunn did not argue the checks were evidence of her

14

"specific habit."  Instead, she made the following argument in response to the Commonwealth's objection:

> The relevance . . . is that as a teacher she would expend her own funds in excess of what she was paid.  It's contrary to the thought that she would also then, at the same time, steal $30 from the school system.

Since Gunn failed to argue "specific habit" in the circuit court, we will not address the argument for the first time on appeal.  See Rule 5:25; Buck v. Commonwealth, 247 Va. 449, 452-53, 443 S.E.2d 414, 416 (1994) (defendant's failure to raise certain arguments before the trial court precluded him from raising them for the first time on appeal).  Furthermore, we conclude that the circuit court did not abuse its discretion in refusing to admit the checks.  See Smith v. Irving, 268 Va. 496, 501, 604 S.E.2d 62, 65 (2004) ("A court's decision regarding the admission or exclusion of evidence is discretionary in nature and, thus, will not be overturned on appeal unless the record shows an abuse of that discretion.")  Gunn's expenditure of personal funds on behalf of her students and cheerleaders was not relevant to whether she knowingly misused or misappropriated "other funds" that came into her custody in her official capacity as a public employee.  Code § 18.2-112.

CONCLUSION

15

For these reasons, we will affirm the judgment of the Court of Appeals.

Affirmed.