COURT OF APPEALS OF VIRGINIA

Present: Judges Kelsey, Beales and Retired Judge Clements[*]
Argued at Richmond, Virginia


DELANO KING

                                                OPINION BY

v.     Record No. 2029-07-2        JUDGE JEAN HARRISON CLEMENTS
                                               JANUARY 13, 2009

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
James F. D'Alton, Jr., Judge

Paul S. Roskin (Vergara & Associates, on brief), for appellant.

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Delano King (appellant) was convicted in a bench trial of willfully discharging a firearm

within 1,000 feet of the property line of school property, in violation of Code § 18.2-280(C).[1]

Appellant contends the trial court erred in finding the evidence sufficient to sustain his

conviction. Finding no error, we affirm the trial court's judgment and appellant's conviction.

I. BACKGROUND

The facts relevant to this appeal are not in dispute. Around 8:00 p.m. on Friday, August

25, 2006, appellant discharged a firearm in the City of Hopewell, hitting Kionna Jones in the

throat. The discharge occurred approximately 795 feet from the property line of the premises

---

[*] Judge Clements participated in the hearing and decision of this case prior to the
effective date of her retirement on December 31, 2008, and thereafter by designation pursuant to
Code § 17.1-400(D).

[1] Appellant was also convicted in the same proceeding of aggravated malicious
wounding, use of a firearm in the commission of a felony, discharging a firearm in a public
place, and brandishing a firearm. Those convictions are not before us here.

leased by The LEAD Center, Ltd., (LEAD Center or Center) at 510 W. Poythress Street (premises).

The LEAD Center leased the premises, a former Catholic school, from Saint James Catholic Church (church) and operated a "therapeutic day school" there. That school was licensed by the Virginia Board of Education as a "Private Day School for Students With Disabilities." The LEAD Center's lease with the church permitted the Center's students and personnel to access the premises Monday through Friday from 7:00 a.m. to 6:00 p.m. The LEAD Center needed the church's permission to use the premises during other times. Requests for such permission were to be "dealt with [by the church] on a case by case basis." The original lease, which ran from December 1, 2004, to November 30, 2005, was timely renewed and "continued for a five-year period." The LEAD Center was operating a school on the leased premises in accordance with the terms of the lease on August 25, 2006.

At trial, appellant moved to strike the Commonwealth's evidence, arguing that, at the time of the shooting, the premises leased by the LEAD Center did not constitute "school property" within the meaning of Code § 18.2-280(C) because, based on the terms of the lease, the premises reverted from school property to church property at 6:00 p.m. on Friday, August 25, 2006, and did not revert back to school property until 7:00 a.m. the following Monday morning. The Commonwealth countered that nothing in the statute required that the school be in session at the time of the discharge for the statute to apply. Finding the premises constituted school property "for the purposes of the statute," the trial court denied appellant's motion and convicted him under Code § 18.2-280(C).

This appeal followed.

## II. ANALYSIS

On appeal, appellant contends the evidence was insufficient, as a matter of law, to sustain his conviction under Code § 18.2-280(C) because the Commonwealth failed to prove he discharged a firearm within 1,000 feet of the property line of "school property." Appellant concedes that he discharged a firearm within 1,000 feet of the property line of a school that operated from 7:00 a.m. until 6:00 p.m. each weekday and that, had the discharge occurred within those hours, the evidence would have been sufficient to sustain his conviction. He asserts, however, that his conduct did not fall within the ambit of Code § 18.2-280(C) because the discharge occurred after 6:00 p.m., when, pursuant to the terms of the LEAD Center's lease, the Center "had no legal right to use the property without the permission of the church" and the premises became "the church's property to do with as it saw fit." Consequently, the property line associated with the premises was no longer "a school property line within the meaning of the statute" at the time of the discharge around 8:00 p.m., he argues. Code § 18.2-280(C), he maintains, is not intended "to include any property that is sometimes used as a school, even when the school is not in session and the property is being used, if at all, for other purposes." Thus, he concludes, the trial court erred in finding the evidence sufficient to sustain his conviction under the statute. We disagree.

Because the issue appellant presents is a question of law involving the interpretation of Code § 18.2-280(C), we review the trial court's judgment *de novo*. See Sink v. Commonwealth, 28 Va. App. 655, 658, 507 S.E.2d 670, 671 (1998) ("[W]e review the trial court's statutory interpretations and legal conclusions *de novo*.").

"Although penal statutes are to be strictly construed against the Commonwealth, courts are nevertheless bound by the plain meaning of unambiguous statutory language and 'may not assign a construction that amounts to holding that the General Assembly did not mean what it

actually has stated.'" Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327 (2006) (citation omitted) (quoting Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003)). "The manifest intention of the legislature, clearly disclosed by its language, must be applied." Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944). We therefore "will not apply 'an unreasonably restrictive interpretation of [a penal] statute' that would subvert the legislative intent expressed therein." Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760, 761 (1979)). Indeed, "'the plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" Gunn, 272 Va. at 587, 637 S.E.2d at 327 (quoting Turner v. Commonwealth, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)).

Code § 18.2-280(C) provides:

> If any person willfully discharges or causes to be discharged any firearm upon any public property within 1,000 feet of the property line of any public, private or religious elementary, middle or high school property he shall be guilty of a Class 4 felony, unless he is engaged in lawful hunting.

As relevant to the issue before us, the statute's language is plain and unambiguous and clearly manifests the legislature's intent to prohibit the discharge of firearms in the vicinity of the designated school properties. By its express terms, the statute refers to "the property line of any public, private or religious elementary, middle or high school property." Nothing in this language limits the statute's application in the manner appellant advocates. The statute draws no distinction between schools that lease their facilities and those that do not. Nor does it distinguish between schools based on how or by whom they are used after hours. Likewise, the statute does not limit its application to only those schools that are in session or are occupied at the time of the discharge. Rather, the statute simply proscribes the discharging of a firearm within the specified distance to the property line of "*any* public, private or religious elementary,

- 4 -

middle or high school property." (Emphasis added). "The word 'any,' like other unrestrictive modifiers such as 'an' and 'all,' is generally considered to apply without limitation." Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996); see also Cox v. Cox, 16 Va. App. 146, 148, 428 S.E.2d 515, 516 (1993) ("The plain and unambiguous meaning of the word 'any' is 'one or more indiscriminately from all those of a kind.'" (quoting Webster's Third New International Dictionary 97 (1981))). It is clear, therefore, that the plain meaning of the language of Code § 18.2-280(C) does not support appellant's position.

Moreover, as appellant points out, the legislature has expressly created in Code §§ 18.2-280(C) and 18.2-280(D) certain exceptions to the prohibition against discharging a firearm within 1,000 feet of the property line of school property.[2] Code § 18.2-280(C) specifically exempts those "engaged in lawful hunting" from the prohibition. Similarly, Code § 18.2-280(D) exempts "any law-enforcement officer in the performance of his official duties" and "any other person whose said willful act is otherwise justifiable or excusable at law in the protection of his life or property, or is otherwise specifically authorized by law." Neither of those exemptions applies to appellant, and neither statute sets forth any other exceptions.

Consequently, to adopt appellant's position that he was exempted from the prohibition set forth in Code § 18.2-280(C) because the LEAD Center school, pursuant to the terms of its lease, was not in session or even able to use the property in question without the permission of the

---

[2] Appellant points to these exceptions as indications that the legislature intended to prevent the discharge of firearms only "at times where they are most likely to cause harm to innocent parties, particularly children," namely, during school hours. None of the referenced exceptions, however, restrict the permitted discharges to non-school hours. Indeed, they have no temporal components whatsoever. Thus, the exceptions provide little support to appellant's claim that the legislature intended to prohibit discharges only during school hours. It is apparent, rather, that the exceptions were enacted because the legislature did not want to prohibit certain legitimate firearm use, whether it occurred during school hours or not.

church at the time of the discharge would require us to add language to the statute and create by judicial fiat an "additional exemption not provided for by the statute's plain terms, which we may not do." Farnsworth v. Commonwealth, 43 Va. App. 490, 499, 599 S.E.2d 482, 486 (2004), aff'd, 270 Va. 1, 613 S.E.2d 459 (2005); see Young v. Commonwealth, 273 Va. 528, 534, 643 S.E.2d 491, 494 (2007) ("[C]ourts cannot, by judicial interpretation, add language to a statute that the General Assembly did not include in its enactment."). The interpretation urged by appellant also runs counter to the maxim of statutory construction *expressio unius est exclusio alterius*, which "provides that where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within the scope of the statute." Commonwealth ex rel. Virginia Dep't of Corrections v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96, 101 (2000).

Additionally, the adoption of appellant's position that the premises constituted "school property" under the statute only during those times the LEAD Center was contractually permitted to use the premises would result in significant enforcement problems. For one thing, it would require law enforcement personnel to know or be able to easily determine the precise contractual terms of the schools operating in their jurisdiction. And, in the case of schools like the LEAD Center, which was explicitly permitted to use the premises after hours with the church's permission, law enforcement personnel would be required to keep track of when such permission was granted in order to know whether a particular firearm discharge was prohibited under Code § 18.2-280(C).

In other words, appellant's interpretation of the statute would cause firearm discharges to fall within or without the ambit of the statute based not on constant, easily determined factors, but on whatever use the school premises were being put to at any particular moment. By logical extension, appellant's interpretation would also result in public schools—if temporarily put to some other use or no use at all—falling outside the ambit of Code § 18.2-280(C) during those

hours of use not directly connected with school functions. Clearly, the legislature, which was undoubtedly aware that many schools are used for non-school purposes after school hours and that no school remains constantly in session, did not intend such illogical results. Indeed, the legislature chose not to include in the statute any requirement that the school in question be in session or otherwise in use at the time of the discharge. The legislature instead opted to simply prohibit discharging a firearm within the defined distance to the school's property line. By its nature, a property line is a constant that is easily determined.

We conclude, therefore, that the legislature did not intend Code § 18.2-280(C) to be applied in the restrictive, constrained manner appellant advocates here. Accordingly, we reject appellant's interpretation and hold that, at the time of the subject firearm discharge by appellant, the property line at issue in this case was a school "property line," within the plain meaning of Code § 18.2-280(C).

Thus, the trial court did not err in finding the evidence sufficient, as a matter of law, to sustain appellant's conviction under Code § 18.2-280(C).

## III. CONCLUSION

For these reasons, we affirm the judgment of the trial court and appellant's conviction.

<u>Affirmed.</u>