COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Annunziata
Argued at Alexandria, Virginia

UNPUBLISHED

ROGER BOWMAN

MEMORANDUM OPINION[*] BY
v.      Record No. 0787-11-4                           JUDGE TERESA M. CHAFIN
FEBRUARY 5, 2013

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jan L. Brodie, Judge

Maynard M. Henry, Sr., for appellant.

Leah A. Darron, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Roger Bowman ("appellant") was convicted by a jury of grand larceny by embezzlement in

violation of Code § 18.2-111. On appeal, appellant contends that the trial court erred by failing

to grant his motion to strike based upon the fatal variance between the indictment issued against

appellant and the facts proven at trial.[1] We agree and reverse appellant's conviction.

I. BACKGROUND

On appeal, we review the evidence in the "light most favorable" to the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). Viewing the record

through this evidentiary prism requires us to "discard the evidence of the accused in conflict with

that of the Commonwealth, and regard as true all the credible evidence favorable to the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also contends on appeal that the trial court erred by denying his motion to set
aside the verdict based upon the fatal variance and the trial court's refusal to answer a question
from the jury related to the relevance of this fatal variance. Because we find that the motion to
strike the evidence was erroneously denied, we do not address this assignment of error.

Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

So viewed, the evidence proved that from May 2005 through March 2006, appellant was an ITT specialist employed by Multimax, a subsidiary of Netco Government Service. Multimax supplied ITT personnel. The Harris Corporation ("Harris") subcontracted with Multimax to assign five or six employees to work on a federal project called the Patriot Program affiliated with the National Reconnaissance Office ("NRO"). Appellant was one of the employees assigned to the project. He was employed full time as an hourly wage employee working 40 hours per week. Appellant was paid based on the number of hours he certified on his time sheets. Multimax employees submitted their time sheets to Multimax supervisors who approved them and sent them to Harris, who then paid Multimax. After paying Multimax, Harris sent the time sheet invoices to its customer, namely, the federal government, for reimbursement. For the period alleged in the indictment, appellant submitted time cards reflecting that he worked 1,736 hours for which he was paid $70,412.16. According to data from the access control system, however, appellant only spent seventy-two hours on the job during this time period.[2]

During an investigation of the matter, appellant provided a handwritten statement admitting that he was employed starting in February 2005 to work on the Patriot Program, but that he did nothing for the first four to six months except sit in a room. He asked the Harris project manager for another position, and when he did not get another position, he "got fed up"

---

[2] Appellant's job was to perform "desktop support," meaning he loaded computers with software. This required him to work on site, in the customer environment where he had access to a secure network. The government buildings in which appellant was hired to work were "classified facilities," requiring use of site specific security badges to access and move around the buildings. Appellant had to move through security doors and have access to the computers on which he worked. Commonwealth's Exhibit 3 was a document generated using information from the access control system showing the dates and times of appellant's access, egress, and location in the classified buildings.

and "stopped coming in every day." He said he went to work several times a week to check email, but he completed his time cards from home and studied for his Cisco Certified Networking Professional Security certification. Appellant submitted his resignation to Multimax on March 13, 2006.

On September 20, 2010, the grand jury indicted appellant, charging that

> [o]n or about the 1st day of May, 2005, and continuing through the 31st day of May, 2006, in the County of Fairfax, [appellant] did unlawfully, and feloniously, wrongfully and fraudulently with the intent to deprive permanently the owner thereof, embezzle good and lawful currency of the United States in excess of $200.00, property of Harris Corporation, by virtue of his office, trust, or employment.

At the conclusion of the Commonwealth's evidence at trial, appellant rested without presenting any evidence and moved to strike on the ground that he could not have wrongly deprived Harris of funds as alleged in the warrant and indictment because he was not employed by Harris. The motion to strike was denied.

## II. ANALYSIS

Appellant contends on appeal that this Court should reverse his conviction because a fatal variance exists between the indictment and the proof at trial. This argument rests on the assertion that the indictment alleged embezzlement from Harris, but the Commonwealth failed to prove that appellant was employed by or was in "privity of contract or relationship" with Harris. Without this connection, appellant argues, he could not have wrongly deprived Harris of funds.

"The point of an indictment 'is to give an accused notice of the nature and character of the accusations against him in order that he can adequately prepare to defend against his accuser.'" Purvy v. Commonwealth, 59 Va. App. 260, 265-66, 717 S.E.2d 847, 850 (2011) (quoting King v. Commonwealth, 40 Va. App. 193, 198, 578 S.E.2d 803, 806 (2003)). A variance arises when an indictment varies from the proof at trial. However, not every variance is

fatal. A fatal variance must be one that charges a wholly different offense than the one proved, –

such as charging theft of money by false pretenses from victim A, while proving only theft of

money by false pretenses from victim B, Gardner v. Commonwealth, 262 Va. 18, 546 S.E.2d 686

(2001), or charging a defendant with shooting into one woman's residence while proving that he

shot into another woman's residence, Etheridge v. Commonwealth, 210 Va. 328, 171 S.E.2d 190

(1969). "[A] variance will be deemed fatal 'only when the proof is different from and irrelevant

to the crime defined in the indictment and is, therefore, insufficient to prove the commission of

the crime charged.'" Purvey, 59 Va. App. at 267, 717 S.E.2d at 850 (quoting Stokes v.

Commonwealth, 49 Va. App. 401, 406, 641 S.E.2d 780, 783 (2007)). In other words, the offense

must be proved as charged. See Mitchell v. Commonwealth, 141 Va. 541, 560, 127 S.E. 368,

374 (1925).

In this case, the indictment charged appellant with embezzlement of over $200 from

Harris in violation of Code § 18.2-111. Code § 18.2-111 states in pertinent part,

> If any person wrongfully and fraudulently use, dispose of, conceal
> or embezzle any money, . . . which he shall have received for
> another or for his employer, principal or bailor, or *by virtue of his
> office, trust, or employment*, or which shall have been entrusted or
> delivered to him by another or by any court, corporation or
> company, he shall be guilty of embezzlement.

(Emphasis added). A conviction of embezzlement requires the Commonwealth to prove that

(1) "a relationship such as that of employment or agency between the owner of the money and

the defendant" and (2) "that the money alleged to have been embezzled must have come into the

possession of the defendant by virtue of that relationship." Ratliff v. Commonwealth, 20

Va. App. 43, 46 n.2, 455 S.E.2d 259, 260 n.2 (1995) (citing Black's Law Dictionary 522 (6th ed.

1990)). The evidence clearly proved that appellant was not in a position of trust with Harris. He

was a direct employee of Multimax. Appellant submitted his time sheets to Multimax

supervisors who approved them and sent them to Harris, who then paid Multimax.

Thus, because the evidence failed to link appellant with Harris, the Commonwealth's evidence was insufficient to sustain appellant's conviction for violating Code § 18.2-111 as charged in the indictment.

Reversed.