Present:  All the Justices

BRIGITTE MERCER

v. Record No. 990821    OPINION BY JUSTICE CYNTHIA D. KINSER
                                              January 14, 2000
COMMONWEALTH OF VIRGINIA

        FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                    Verbena M. Askew, Judge

    In this appeal, we consider the definition of the term

"[m]entally ill" in Code § 37.1-1 in relation to the

criteria set forth in Code §§ 19.2-182.3 and –182.5 for the

continued commitment of an individual found not guilty of

criminal charges by reason of insanity.  Because we

conclude that there is sufficient evidence in the record to

support the circuit court's judgment that the acquittee

does not satisfy the requirements for conditional release,

we will affirm that judgment.

                            FACTS

    Brigitte Daniele Mercer was found not guilty by reason

of insanity (NGRI) on charges of carjacking, grand larceny,

maiming, and robbery.  Pursuant to Code § 19.2-182.2,[1] the

circuit court remanded Mercer to the custody of the

Commissioner of the Department of Mental Health, Mental

---

    [1] Code § 19.2-182.2 requires, in pertinent part, that a
person acquitted by reason of insanity shall be placed in
the temporary custody of the Commissioner of Mental Health,
Mental Retardation and Substance Abuse Services "for

Retardation and Substance Abuse Services (the

Commissioner).  In January 1997, the court conditionally

released her from custody pursuant to Code § 19.2-182.7.[2]

However, the circuit court required Mercer to undergo a 30-

day inpatient evaluation in June 1997 after Mercer claimed

that she had been raped and had sustained a stab wound to

her thigh.  The court eventually recommitted Mercer to the

custody of the Commissioner.

Mercer next appeared before the circuit court on

August 25, 1998, pursuant to Code § 19.2-182.5,[3] for the

purpose of determining whether she continued to need

_____

evaluation as to whether the acquittee may be released with
or without conditions or requires commitment."

[2] Code § 19.2-182.7 provides that upon consideration of
an NGRI acquittee's need for inpatient hospitalization, the
acquittee must be conditionally released if the court finds
that

> (i) based on consideration of the factors which the
> court must consider in its commitment decision, he
> does not need inpatient hospitalization but needs
> outpatient treatment or monitoring to prevent his
> condition from deteriorating to a degree that he would
> need inpatient hospitalization; (ii) appropriate
> outpatient supervision and treatment are reasonably
> available; (iii) there is significant reason to
> believe that the acquittee, if conditionally released,
> would comply with the conditions specified; and (iv)
> conditional release will not present an undue risk to
> public safety.

[3] Code § 19.2-182.5(A) requires that a "committing
court shall conduct a hearing twelve months after the date
of commitment to assess each confined acquittee's need for
inpatient hospitalization."

inpatient hospitalization.  At that hearing, the court heard testimony from two expert witnesses, Evan S. Nelson, Ph.D., a licensed clinical psychologist, and Christine A. Bryant, Psy.D., also a licensed clinical psychologist. Both experts examined Mercer prior to the hearing and submitted written reports to the court pursuant to Code § 19.2-182.5(B).  Based on their evaluations, Dr. Bryant and Dr. Nelson opined that Mercer suffers from antisocial personality disorder (APD) and polysubstance dependence (PSD).  However, they expressed differing opinions with regard to whether either APD or PSD falls within the definition of a mental illness in Code § 37.1-1.

Relying primarily on the Diagnostic and Statistical Manual for Mental Disorders (4th ed. 1994) (DSM-IV), Dr. Bryant testified that both APD and PSD are mental illnesses.  She described APD as being "the disregard for authority or for social rules and mores," and defined PSD as the addiction to multiple drugs.  According to Dr. Bryant, Mercer has been "drug free" only during her periods of hospitalization.  With regard to Mercer's risk of harm to other persons, Dr. Bryant stated that Mercer's history of aggressive behavior, demonstrated by her "extensive legal history," was one of several risk factors requiring continued inpatient hospitalization.  Dr. Bryant believed

3

that Mercer "continues to be a risk for future aggressive behavior," and that she cannot be adequately controlled as an outpatient.

Dr. Nelson did not categorize Mercer's APD as a mental disease or illness. Instead, he drew a distinction between the multiaxial diagnostic system in the DSM-IV, upon which Dr. Bryant relied, and the conditions that courts may consider to be mental illnesses under the Code. However, Dr. Nelson seemingly contradicted himself because he also testified that, under the Code, both APD and PSD are considered mental diseases. He admitted that if the court believed Mercer is mentally ill, continued commitment is warranted. Like Dr. Bryant, Dr. Nelson also believed that Mercer poses a "very, very high risk" for future dangerousness.

Based on this evidence, the circuit court found that Mercer suffers from a mental illness because of her history of drug abuse and addiction.[4] The court concluded "that Mercer does not meet the conditions for conditional release . . . because: 1) Mercer is mentally ill and in need of

---

[4] The circuit court did not rest its decision on Mercer's APD. The court stated that "the case does not rise and fall on whether the Court finds that Mercer's [APD] is a mental illness." Instead, the court focused on "the last portion of [Code] § 37.1-1 which indicates that

4

inpatient hospitalization; 2) it is highly probable that Mercer will violate the terms of the conditional release; 3) her conditional release will present an undue risk to public safety." We awarded Mercer this appeal.

ANALYSIS

Mercer acknowledges on brief that the sole issue before the Court is whether APD and PSD are mental illnesses. She relies on Foucha v. Louisiana, 504 U.S. 71 (1992), in arguing that APD can never be classified as a mental illness. Mercer further contends that PSD is not a mental illness because, according to her, the definition of the term "[m]entally ill" in Code § 37.1-1 expressly excludes drug addiction and alcoholism from its purview for the purpose of determining if an NGRI acquittee should remain in the custody of the Commissioner. Therefore, she asserts that Dr. Bryant's testimony that PSD is a mental illness was insufficient, as a matter of law, to support the circuit court's finding that Mercer suffers from a mental illness.

The Commonwealth argues that Mercer misconstrues the decision in Foucha as well as Code § 37.1-1, and that, at any rate, this Court's focus should be on PSD, not APD,

_____

the term 'mentally ill' shall be deemed to include any person who is a drug addict or alcoholic."

5

since the circuit court did not base its decision on Mercer's APD. The Commonwealth finally asserts that the question whether an individual suffers from a mental illness is a factual determination to be made by the court after hearing the testimony of mental health experts. We agree with the Commonwealth.

As a preliminary matter, we note that the Supreme Court of the United States in Foucha did not, as Mercer argues, state that APD can never, as a matter of law, be classified as a mental illness. Rather, the Court held that a finding of both mental illness and future dangerousness must be present in order to continue the confinement of an NGRI acquittee. Foucha, 504 U.S. at 80. In that case, there was no medical evidence that Foucha was mentally ill at the time of his hearing, although the testimony regarding his future dangerousness was uncontested. Id. at 74-75. The government in Foucha did not argue that Foucha's APD was a mental illness; rather, it relied on the trial court's finding that the APD made Foucha a danger "to himself or others." Id. at 78. Thus, the Supreme Court did not decide in Foucha whether APD is a mental illness, but simply affirmed the principle that a state cannot confine an individual with a mental illness absent a showing by clear and convincing evidence "that the

6

individual is mentally ill and dangerous." Id. at 80

(quoting Jones v. United States, 463 U.S. 354, 362 (1983)).

However, as the Commonwealth points out, the circuit court in the present case did not rest its decision on Mercer's APD, but instead focused on her PSD. Accordingly, we will now address that diagnosis and the circuit court's analysis of it.

As already noted, Mercer argues that Code § 37.1-1 expressly excludes drug addicts,[5] and thus individuals with PSD, from the definition of "[m]entally ill" when deciding whether to continue the confinement of an NGRI acquittee. That Code section provides, in pertinent part, "that for the purposes of Chapter 2 (§ 37.1-63 et seq.) of this title, the term 'mentally ill' shall be deemed to include any person who is a drug addict or alcoholic." According to Mercer, this language means that neither drug addiction nor alcoholism can serve as the basis for a finding of

---

[5] The term "[d]rug addict" is defined in Code § 37.1-1 as "a person who: (i) through use of habit-forming drugs or other drugs enumerated in the Virginia Drug Control Act (§ 54.1-3400 et seq.) as controlled drugs, has become dangerous to the public or himself; or (ii) because of such drug use, is medically determined to be in need of medical or psychiatric care, treatment, rehabilitation or counseling."

7

mental illness except for the purposes of Chapter 2.[6]  We

disagree.

The language of Code § 37.1-1 does not squarely

address the question whether PSD qualifies as a mental

illness for purposes other than Chapter 2, such as

satisfying the standard for Mercer's continued commitment

as an NGRI acquittee.  In other words, it neither compels

nor forbids a finding of mental illness based on PSD in

situations that are not covered by Chapter 2.  However, we

believe that it would strain credulity to say, as Mercer

suggests, that PSD qualifies as a mental illness when

deciding whether to voluntarily or involuntarily admit an

individual who has not committed an unlawful act to a

hospital for treatment, but is never a mental illness when

determining whether to continue the inpatient

hospitalization of an NGRI acquittee.

Instead of focusing solely on the definition of

"[m]entally ill" in Code § 37.1-1, we believe that the

analysis should include the provisions of Code §§ 19.2-

182.3 and -182.5, which set forth the criteria that must be

satisfied in order to continue Mercer's commitment to the

---

[6] Chapter 2 of Title 37.1 deals primarily with the
voluntary and involuntary admission of a person with a
mental illness to a hospital for treatment of such illness.

custody of the Commissioner.  Specifically, Code § 19.2-182.5 provides that the court can retain an NGRI acquittee in the custody of the Commissioner if the acquittee "continues to require inpatient hospitalization based on consideration of the factors set forth in § 19.2-182.3." Under Code § 19.2-182.3, "mental illness includes any mental illness, as this term is defined in § 37.1-1, in a state of remission when the illness may, with reasonable probability, become active."  (Emphasis added.)  In contrast, the definition of "[m]entally ill" in Code § 37.1-1 does not include the phrase "in a state of remission."  Thus the term "mental illness" in Code § 19.2-182.3 is not limited solely to the definition of "[m]entally ill" in  Code § 37.1-1.

Code § 19.2-182.3 also establishes four factors that the circuit court had to consider in determining whether to continue Mercer's commitment:

    1.  To what extent the acquittee is mentally ill or mentally retarded, as those terms are defined in § 37.1-1;
    2.  The likelihood that the acquittee will engage in conduct presenting a substantial risk of bodily harm to other persons or to himself in the foreseeable future;
    3.  The likelihood that the acquittee can be adequately controlled with supervision and treatment on an outpatient basis; and
    4.  Such other factors as the court deems relevant.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States acknowledged that it had never "required State legislatures to adopt any particular nomenclature in drafting civil commitment statutes." Id. at 359. Instead, the Court "left to legislators the task of defining terms of a medical nature that have legal significance." Id. Consequently, the Court recognized that states have "developed numerous specialized terms to define mental health concepts" and that those "definitions do not fit precisely with the definitions employed by the medical community." Id.

Accordingly, we conclude that the determination with regard to whether Mercer suffers from a mental illness, and therefore should continue to be committed to the custody of the Commissioner, is a question of fact to be resolved by the trial court based upon consideration of the relevant Code provisions, and the report and testimony of mental health experts. The circuit court in this case heard testimony from Dr. Bryant and Dr. Nelson, and also had the benefit of their written reports. While the experts agreed that Mercer still presents a high risk of engaging in aggressive behavior and harming others, they disagreed about whether Mercer is mentally ill. Thus, the circuit court had to resolve that conflict in the testimony.

There are several established principles that guide our review of the circuit court's resolution of the conflict in the testimony of the two witnesses. "Conflicting expert opinions constitute a question of fact . . . ." McCaskey v. Patrick Henry Hospital, 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983).  It is within the province of the finder of fact "to assess the credibility of the witnesses and the probative value to be given their testimony."  Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991).  The factual determinations of the trial court, like those of a jury, are binding on this Court, and we will reverse such findings "only if they are plainly wrong or without evidence to support them."  Id.

Considering the evidence in this case in light of these established principles, we conclude that the circuit court correctly determined that Mercer continues to need inpatient hospitalization in accordance with the terms of Code §§ 19.2-182.3 and -182.5.  There is evidence in the record to support the court's conclusion that Mercer suffers from a mental illness and presents a substantial risk of bodily harm to other persons because of her long history of drug abuse, drug addiction, and violence.  Although not dispositive of the issue before us, it is significant that the circuit court also found that Mercer

meets the definition of the term "[d]rug addict" in Code § 37.1-1.  Finally, Dr. Bryant and Dr. Nelson disagreed only with regard to whether PSD is a mental illness.  In resolving that conflict, the circuit court is not necessarily bound by the definitions employed by the medical profession.  See Hendricks, 521 U.S. at 359.

For these reasons, we will affirm the judgment of the circuit court.

Affirmed.