COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Frank and Humphreys
Argued by teleconference


COMMONWEALTH OF VIRGINIA

v.   Record No. 0876-02-1

LOUVIERE CRADLE

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS

COMMONWEALTH OF VIRGINIA                    OCTOBER 8, 2002

v.   Record No. 0877-02-1

LOUVIERE CRADLE


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Von L. Piersall, Jr., Judge

Marla Graff Decker, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on briefs), for appellant.

S. H. Weaver, Sr., for appellee.


Pursuant to Code § 19.2-398, et seq., the Commonwealth of

Virginia appeals orders of the trial court suppressing evidence

found by police during a search of Louviere Cradle's vehicle. The

suppressed evidence relates to Cradle's indictment for possession

of cocaine with intent to distribute, possession of cocaine with

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication. Further, because this opinion has
no precedential value, we recite only those facts essential to
our holding.

intent to distribute on school property, and possession of a firearm while in possession of cocaine.[1]  For the reasons that follow, we affirm the decision of the trial court.

Background

During the hearing on Cradle's motion to suppress the evidence, Detective L. Defredas, of the Portsmouth Police Department, testified that on June 21, 2001, at approximately 7:15 p.m., he received a telephone call on his cellular phone from a confidential informant.  The informant told Defredas that ten minutes prior to making the telephone call, he had observed an individual he referred to as "Big" in possession of, and selling, crack cocaine from a burgundy Volvo.  The informant gave Defredas the license plate number of the Volvo and told him that "Big" was driving the Volvo and that there were three other individuals in the car.  The informant described "Big" as a "heavy-set black male with medium brown skin and dreads," and

---

[1] Although each of the charges against Cradle originates from the same set of circumstances, the indictment for possession with intent to distribute was issued separate and apart from the indictment against Cradle for possession with intent to distribute on school property, and possession of a firearm while in possession of cocaine.  Thus, two separate cases are pending against Cradle, Circuit Court Case Numbers CR01-2632 and CR01-2633.  However, the record reflects that the matters were consolidated by the trial court for purposes of the hearing on the motion to suppress, and its resulting orders suppressing the evidence.  Therefore, the Commonwealth filed a petition for appeal in both matters.  Since the factual circumstances underlying the motion and the trial court's decision in each matter are identical, we likewise, consolidate the appeals.

-

told Defredas that "in thirty minutes[, 'Big'] would be pulling up to 45 East Pollux Circle."  "[A]t that point [the individuals in the car] would be selling crack to two individuals who were meeting ['Big'] there."  Finally, he informed Defredas that the contraband would be "on ['Big']."

However, on cross-examination, there was some dispute as to whether Defredas had testified during the preliminary hearing that the informant told him how he knew Cradle would have drugs on his person.  There was also some dispute as to whether Defredas had testified at the preliminary hearing that the informant had told him the location was "East Pollux," as opposed to "West Pollux," and whether the informant had told him Cradle was going to that location for the purpose of selling drugs.

Defredas testified that he knew "Big" to be Louviere Cradle.[2] He further testified that the confidential informant had been arrested in Portsmouth and charged with possession of drugs with intent to distribute, as well as possession of a firearm.  He had been providing information to the police concerning drug activity in Portsmouth "with a view to [sic] helping reduce his charges," and had been giving Defredas information for about "[f]our to six weeks" prior to the date of the telephone conversation at issue.

_____

[2] Defredas testified that the informant referred to Louviere Cradle as William Cradle.  It was later determined that Cradle often used the name of his brother, "William Cradle," and that Cradle had used his brother's name in this instance.

-

Defredas stated that he had been able to substantiate information provided by the informant on "four or five occasions." Nevertheless, the informant had not provided information that had led to an arrest in Portsmouth, nor had he provided information that had yet led to the discovery of illegal drugs.[3]

Defredas testified that he was off-duty and with his children at the time he received the informant's telephone call. He contacted Officer Vicky Miller, who was working uniform patrol at the time, and relayed "the information to her in relation to Mr. Cradle and where he would be going, what he would be driving, his description, and that there would be three other people in the vehicle." Defredas denied having received "any information . . . with respect to safety issues" from the informant and denied having relayed such information to Officer Miller.

Officer Miller testified that Defredas called her on her cellular phone at approximately "ten minutes to eight" that evening. She stated that Defredas told her

> [t]hat an individual that went by the nickname of Big named William Cradle who would be a large, heavy-set black male with dreads would be driving a burgundy Volvo bearing Virginia tags 647845 who would

---

[3] Defredas testified, however, that after Cradle's arrest, one of the individuals about whom the informant had provided information was arrested in the City of Norfolk, "based on that information and other investigation."

-

> be making – And he would have a large amount
> of crack cocaine secreted about his person.
> He would be making a delivery in the area of
> East Pollux Circle, specifically in the 40
> block.

Miller also testified that Defredas had told her that "one or more guns may be in the vehicle."

Miller then contacted two other officers who were in the area, Officer J.C. Knorowski and Officer Grove, and relayed the information to them. Miller stated that she and Officer Grove subsequently reported to the area on foot and stood off to the side by a tree. Officer Knorowski reported to the area in his marked police car, stopping to observe from around the corner on West Pollux Circle. Shortly thereafter, Officer Miller observed a burgundy Volvo, bearing the license plate number 647845, driving toward the area on the right side of the road. The Volvo then "pulled from the right side of the road, came across the traffic lane, [and] pulled to the curb in the left side of the road opposing traffic [sic]." Miller observed that there were four occupants in the car. After bringing the car to a stop, Cradle, who was driving, "looked back over his left shoulder," looked in the direction of Officers Miller and Grove, and appeared to be startled. He then "turned his head around real quick, stepped on the gas[,] . . . broke traction and sped off at a very high rate of speed," around the corner. Officer Miller radioed Officer Knorowski and advised him to stop the Volvo "and perform a traffic stop."

-

Officer Knorowski testified that Officer Miller told him the driver of the car would be in possession of a large quantity of cocaine and that it was possible there were weapons in the car. Accordingly, Knorowski activated his emergency lights and conducted a "felony stop" of the car. Once he stopped the car, he used the "PA system" to order the occupants out of the car, one at a time, with their hands raised. By this time, Officers Miller and Grove had arrived on the scene. Each of the officers then approached the vehicle and the occupants with their weapons drawn, handcuffed the occupants, and placed them under investigative detention. The officers next conducted a search of the vehicle, as well as the individuals, and found no drugs or weapons.

Officer Miller testified that she then contacted Detective Defredas, at approximately 8:30 p.m. Miller stated that Defredas arrived at the scene at approximately 8:50 p.m. Once he arrived, he spoke with Officer Miller and "the individuals from the vehicle." Defredas testified that when he spoke with Cradle, he advised him of his Miranda rights and stated that Cradle indicated he understood the rights, and waived them. Defredas then told Cradle about the information he had received from the informant and told him that he believed Cradle "had cocaine about his person." Cradle denied having drugs, but after some discussion with Defredas, agreed to a strip-search.

Defredas and Knorowski transported Cradle to the nearest police station to conduct the strip-search. Once they arrived

-

there, Cradle conceded that he "had a quarter of an ounce," but claimed "he had thrown it out . . . as they had come [sic] around the bend when the police were trying to stop him." Defredas told Cradle he would notify the officers at the scene to look for the drugs, but stated that he was going to go through with the strip-search. Cradle then took each of his clothing items off, one-by-one, so the officers could search his clothing as well as his person. Initially, the officers found only a "large amount of U.S. currency," and found no drugs. However, as Cradle began to put his clothing back on, Defredas observed a plastic bag, which appeared to contain crack cocaine, located between the rolls of fat on the rear, upper portion of Cradle's thigh. Defredas seized the item and placed Cradle under arrest. At that time, Cradle consented to a search of his home where officers recovered firearms, a scale, and cash from Cradle's bedroom.

Based upon this evidence, the trial court granted Cradle's motion to suppress, finding:

> The confidential informant is not somebody who's been verified much [sic]. It's just somebody who [Defredas] made a deal with when he arrested him, and then [Defredas] says that the informant gave him some information. There's some peculiarity about the information. Did the guy have a gun? Did he not have a gun? Did he have drugs on him or did he not have drugs on his person? [H]ad he given information in the past that led to something, some reliable information? Has it led to arrests? Has it led to finding any drugs? Everything depends – And Defredas is not the one who made the stop.

-

He gave the information to another police
Officer who made the stop.

   *      *      *      *      *      *      *

And I am going to suppress the evidence.  I
think that this is very tenuous in this
case.  If the policeman had enough evidence
that he thought there should have been an
arrest made, he should have followed it up.
He should have corroborated it in some way.
He shouldn't have – We shouldn't be getting
this evidence second – and third-hand, from
Miller to Knorowski to the Court and back;
and there was no need for those policemen to
sit out there and wait for the off-duty
policeman to come who couldn't come in the
beginning.  It seems to me that the police
department ought to have enough people on
the street at any time to have worked this
case out rather than have to wait for
Defredas to do it all.  I'm going to grant
the motion to suppress.

## II.  Analysis

On an appeal of a ruling on a motion to suppress, we view the

evidence in the light most favorable to the party prevailing

below, granting to it all reasonable inferences fairly deducible

therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407

S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's

findings of historical fact unless 'plainly wrong' or without

evidence to support them[,] and we give due weight to the

inferences drawn from those facts by resident judges and local law

enforcement officers."  McGee v. Commonwealth, 25 Va. App. 193,

198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v.

United States, 517 U.S. 690, 699 (1996)).  However, we review

de novo the trial court's application of defined legal standards.

-

*Ornelas*, 517 U.S. at 699.  Thus, in this matter, the burden is upon the Commonwealth to show that the trial court's ruling, when the evidence is considered most favorably to Cradle, constituted reversible error.  See Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980); Commonwealth v. Tart, 17 Va. App. 384, 390-91, 437 S.E.2d 219, 223 (1993).

The Commonwealth contends that here, "the trial court based its conclusion that the defendant was unlawfully stopped and searched on an incorrect interpretation of the law." Specifically, the Commonwealth argues "[t]he judge, while not making any factual conclusions to support suppression of the evidence . . . focused on legally irrelevant facts relating to procedures of the Portsmouth Police."  We disagree with the Commonwealth's contention that the trial court made no factual findings.  Indeed, we find that they are dispositive of the issue presented and, therefore, affirm the judgment of the trial court on the motion to suppress.

A fair reading of the trial court's lengthy commentary, in conjunction with its holding, establishes that the trial court was clearly concerned with the credibility of the Commonwealth's witnesses in this matter.  In fact, just before suppressing the evidence, the trial court stated:

> You know, Detective Defredas' involvement in
> this is peculiar, to be honest with you.  He
> gets a phone call at his personal phone and
> calls some friend of his on the police force
> who's not a detective, who's not in the Vice

-

> Squad, who's not an officer, who's not
> somebody who can assign. He didn't call the
> dispatcher. And then that person stops the
> car and waits for Defredas who said he
> couldn't come earlier because he was not
> working, and then does come. And in the
> process of this investigation he starts
> making deals with the guy he just made a
> deal with to catch. When does it ever stop?
> And that's probable cause to - Is that what
> you're saying?
>
>     *     *     *     *     *     *     *
>
> It all depends on Defredas, doesn't it?
> Everything in this case depends on me
> believing what Defredas has said, right?

Thus, because the factual decisions to be made in determining the reliability of the informant, as well as the reliability of the tip, turned solely on the credibility of the witnesses, the trial court held that reliability had not been established.

It is well settled that in hearing a defendant's motion to suppress, "the trial court, acting as fact finder, must evaluate the credibility of the witnesses . . . [and] resolve the conflicts in their testimony . . . ." Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975). Indeed, when a trial court is sitting as fact finder, it "must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole." Albert v. Commonwealth, 2 Va. App. 734, 738, 347 S.E.2d 534, 536 (1986) (emphasis added). Such "determinations of the trial court, like those of a jury, are binding on this Court, and we will reverse such findings 'only if they are plainly wrong or without evidence to support them.'"

-

<u>Mercer v. Commonwealth</u>, 259 Va. 235, 243, 523 S.E.2d 213, 217 (2000) (quoting <u>McCaskey v. Patrick Henry Hospital</u>, 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983)).

In the case at bar, the trial court resolved the internal conflicts in the Commonwealth's evidence in favor of the defendant and, therefore, found no credible evidence upon which to base a determination of the reliability of the confidential informant's tip. On this record, we cannot find that the trial court's determination in this regard was plainly wrong.

On appeal the Commonwealth recognizes the trial court's concern with Defredas' testimony, but contends that because the trial court made no specific finding as to Defredas' credibility, we must assume the trial court relied upon his testimony in reaching a finding as to the reliability of the tip. However, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the [prevailing party below], and must defer to that resolution[.]'" <u>Wright v. West</u>, 505 U.S. 277, 296-97 (1992) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979)).

Accordingly, because the remaining evidence necessarily flowed from Defredas' interaction with the confidential informant, we find that the trial court was not plainly wrong in finding that the Commonwealth failed to present credible evidence upon which to

-

determine the reliability of the confidential informant's tip and, thus, failed to establish that the police had probable cause to arrest and search Cradle based on the tip.  Therefore, we affirm the judgment of the trial court, granting the motion to suppress the evidence.

Affirmed.