COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 0367-07-1          JUDGE JEAN HARRISON CLEMENTS
AUGUST 14, 2007
EARL NATHANIEL COMBS, JR.


FROM THE CIRCUIT COURT OF YORK COUNTY
N. Prentis Smiley, Jr., Judge

Gregory W. Franklin, Assistant Attorney General (Robert F.
McDonnell, Attorney General, on briefs), for appellant.

Claire G. Cardwell (Stone & Cardwell, PLC, on brief), for appellee.


Earl Nathaniel Combs, Jr., stands indicted for possessing a firearm as a felon, in violation of

Code § 18.2-308.2.  Pursuant to Code § 19.2-398, the Commonwealth appeals a pretrial ruling

granting Combs's motion to suppress evidence of a handgun found under the front passenger seat of

Combs's car.  The Commonwealth contends the trial court erred in suppressing the evidence on the

ground that the police officer who found the handgun exceeded the scope of consent given by

Combs.  Finding no error, we affirm the judgment of the trial court.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this

appeal.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

Responding to a call from dispatch, Deputy Houston pulled his vehicle behind a car being driven by Combs in York County. Almost immediately, Combs pulled over and stopped his car. Houston advised dispatch of the number on Combs's vehicle tags. He then exited his vehicle to talk to Combs, who had also gotten out of his car. Houston and Combs engaged in "casual" conversation. During the conversation, dispatch informed Houston that Combs's vehicle tags were not on file with the Department of Motor Vehicles. Combs explained that he had recently purchased the vehicle and the tags were issued to the car when he purchased it from the dealer. A check by Houston of the car's vehicle identification number showed that the vehicle had been sold and that no tags had been assigned to it yet. While standing next to the driver's side of Combs's car, Houston noticed another Virginia tag on the rear seat floorboard protruding from underneath the front passenger seat. Houston could determine only the first few characters of the tag from his vantage point. Combs informed Houston that the tag underneath the seat belonged to the vehicle he had previously owned.

Deputy Houston asked Combs for permission to retrieve the tag located on the floorboard in order to verify it had been assigned to Combs. Combs responded, "[W]ell, it's my tag." Houston reiterated that he wanted to verify the tag was registered to a vehicle Combs had owned. When Combs offered to retrieve the tag, Houston, who had moved to the rear door closest to the tag, replied, "I'm right here." Combs responded, "[G]o ahead."

In the incident report he completed shortly after his encounter with Combs, Deputy Houston described his retrieval of the tag from the rear seat as follows:

> I opened the rear door of the vehicle to remove the tag. As I pulled the tag from under the seat I discovered an open bottle of alcohol under the seat; however, I was unable to remove it from the rear seat area and had to go to the front seat. Upon reaching under the front seat to remove the bottle, I felt what I believed to be a handgun.

At the suppression hearing, Deputy Houston testified that, having been given consent by Combs "to retrieve the tag from the rear seat of the vehicle," he proceeded to retrieve the tag as follows:

> I opened the rear door of the vehicle to remove the tag. As I pulled it — tried to attempt to pull the tag from underneath the seat — the front seats were bucket seats and they were fairly low to the floor. As I tried to remove the tag from underneath the seat there was a bottle of alcohol that had rolled to the back of the seat and that was putting pressure down on the tag in between the seat and the floor and keeping me from being able to pull the tag out from underneath without pushing the bottle forward.
>
> As I was trying to push the bottle forward to pull the tag out the bottle wouldn't go any further. So at that point I walked around to the front passenger's side seat to reach underneath the floorboard to remove that so I could pull the tag out. Upon reaching underneath the front seat I discovered there was a handgun lying under the front right-passenger seat.

On cross-examination, Deputy Houston testified that his "sole reason" for going around to the front seat was to retrieve the tag. He agreed that finding an open bottle of alcohol would have provided him with further grounds to retrieve the bottle. However, he testified that, from where he was positioned at the rear seat, he could not determine if the bottle was open until he removed it. He explained that, when he stated in the incident report that he "discovered an open bottle of alcohol," he meant he had discovered the bottle was "open" only after he moved to the front passenger seat and retrieved the bottle. Houston further testified that his use in the incident report of the phrase "As I pulled the tag from under the seat" was intended to mean "As I was pulling the tag from under the seat." Additionally, he testified that the term "it" in the report referred to the tag and not the bottle.

After hearing the evidence and argument of counsel, the trial court concluded that the encounter between Deputy Houston and Combs was consensual but that the officer's actions in going around to the front seat to remove the bottle exceeded the scope of the consent given by

Combs. Specifically, the trial court determined that Combs's consent was limited to the retrieval of the partially exposed tag from the rear passenger floorboard and that, having, according to the incident report, already "pulled the tag from under the seat," Houston was not permitted to enter the front passenger seat to retrieve the bottle of alcohol. Thus, the trial court granted the motion to suppress the handgun that Houston discovered under the front passenger seat.

This appeal by the Commonwealth followed.

## II. ANALYSIS

On appeal, the Commonwealth contends the trial court erred in finding that Deputy Houston exceeded the scope of the consent given by Combs. The Commonwealth argues that the court's finding that Houston had already recovered the tag from the rear seat before going to the front seat and finding the handgun is unsupported by the evidence and plainly wrong. We disagree.

"[S]earches made by the police pursuant to a valid consent do not implicate the Fourth Amendment." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc). However, an individual may limit the scope of his consent, see Lawrence v. Commonwealth, 17 Va. App. 140, 145, 435 S.E.2d 591, 594 (1993), and "'[t]he government may not exceed the boundaries of the consent,'" Bolda v. Commonwealth, 15 Va. App. 315, 319, 423 S.E.2d 204, 207 (1992) (quoting United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992)). Accordingly, "'any evidence gathered beyond those boundaries must be excluded.'" Id. (quoting Martinez, 949 F.2d at 1119).

In a hearing on a motion to suppress, the Commonwealth bears the burden of proving the actions of its agents did not violate the defendant's constitutional rights. Simmons v. Commonwealth, 238 Va. 200, 204, 380 S.E.2d 656, 658 (1989). Where, as here, the trial court rules for the defendant and grants the motion, the evidence must be viewed on appeal in the light

most favorable to him as the prevailing party. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Additionally, it is well settled that, in hearing a defendant's motion to suppress, "'the trial court, acting as fact finder, must evaluate the credibility of the witnesses, resolve the conflicts in their testimony and weigh the evidence as a whole.'" Albert v. Commonwealth, 2 Va. App. 734, 738, 347 S.E.2d 534, 536 (1986) (quoting Witt v. Commonwealth, 215 Va. 670, 674, 212 S.E.2d 293, 297 (1975)). Such "determinations of the trial court, like those of a jury, are binding on this Court, and we will reverse such findings 'only if they are plainly wrong or without evidence to support them.'" Mercer v. Commonwealth, 259 Va. 235, 243, 523 S.E.2d 213, 217 (2000) (quoting Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991)). Moreover, "'[b]oth the presence of consent to search and any related limitations are factual issues for the trial court to resolve after consideration of the attendant circumstances.'" Edwards v. Commonwealth, 38 Va. App. 823, 827, 568 S.E.2d 454, 456 (2002) (quoting Bynum v. Commonwealth, 23 Va. App. 412, 418, 477 S.E.2d 750, 753 (1996)).

Applying these principles to the circumstances of this case, we cannot say the trial court erred in determining that Deputy Houston's movement to the front passenger seat to retrieve the bottle of alcohol and subsequent discovery of the handgun exceeded the scope of Combs's consent to retrieve the tag. As the trial court noted, Houston's testimony at the suppression hearing regarding the retrieval of the tag conflicted in significant part with his account of that retrieval in the incident report he wrote shortly after the encounter with Combs. In concluding, on the basis of the incident report, that the officer's actions in going around to the front seat to remove the bottle exceeded the scope of the consent given by Combs, the trial court necessarily found the account of the retrieval in the incident report more credible than Houston's testimony, with the exception of the report's notation that the bottle of alcohol under the seat was open. In

that regard, the court believed Houston's testimony at the suppression hearing that he could not determine from his vantage point that the bottle of alcohol was open. Indeed, as the trial court pointed out, had Houston testified at the hearing that he saw the bottle of alcohol was open, the officer would have had probable cause to retrieve the bottle as evidence of criminal activity. However, the trial court accepted the officer's testimony that he was unaware the bottle was open until he went around to the front seat to retrieve it. Conversely, the trial court rejected the officer's testimony that the incident report did not mean what it said.

Plainly, the trial court resolved the internal conflicts in the Commonwealth's evidence in favor of Combs. "The power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." Harper v. Commonwealth, 49 Va. App. 517, 523, 642 S.E.2d 779, 782 (2007). Indeed, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the [prevailing party below], and must defer to that resolution.'" Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 326 (1979)).

Because the incident report supports the trial court's finding that Houston had already retrieved the tag from the rear passenger floorboard before moving to the front seat to retrieve the bottle of alcohol, we conclude the trial court did not err in holding the officer exceeded the scope of Combs's consent, which both parties agree was limited solely to the retrieval of the tag.

III. CONCLUSION

For these reasons, we affirm the judgment of the trial court and remand for further proceedings should the Commonwealth be so advised.

Affirmed.