COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Frank and Clements
Argued at Richmond, Virginia


GENESIS McLEAN, S/K/A
  GENESIS SAUNDERS McLEAN

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 2090-07-2                        JUDGE JEAN HARRISON CLEMENTS
                                                    OCTOBER 7, 2008

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                          Bradley B. Cavedo, Judge

          Robert P. Geary for appellant.

          Rosemary V. Bourne, Assistant Attorney General (Robert F.
          McDonnell, Attorney General, on brief), for appellee.


       Genesis McLean (appellant) was convicted in a bench trial of second-degree murder

pursuant to Code § 18.2-32, and robbery pursuant to Code § 18.2-58. On appeal, she contends

the trial court erred in finding the evidence sufficient to convict. Finding no error, we affirm

appellant's convictions.

       As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

incidents of the proceedings as are necessary to the parties' understanding of the disposition of

this appeal.

                                      I. BACKGROUND

       "On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

Melvin Patterson (the victim) was found dead on October 4, 2006, his throat and chest having been slashed seven times. He died early that morning as a consequence of one of the cuts to his throat. When his body was discovered, there was glitter on his chest and face. The victim's son testified that he saw the victim almost daily and that numerous items were missing from his home, including a computer, cameras, radios, business card holder, a suitcase, and other electronic equipment.

Appellant, a petite woman, was employed at the time of the victim's death as an exotic dancer and paid escort. She often wore glitter in her capacity as an exotic dancer, and she had become involved with the victim as an escort one or two months before his death. Appellant's husband, Andre McLean (Andre), was six feet two inches tall and weighed one hundred eighty pounds. Andre was arrested attempting to use the victim's credit card in the days following his death, and security video showed he was accompanied by appellant. Police found some of the victim's missing property in the McLean home, and found two forms of the victim's identification in appellant's purse. It was also discovered that appellant had taken the victim's suitcase containing his fax machine to the home of an acquaintance.

Appellant was tried for robbery and second-degree murder on February 28, 2007. Sherrod Wright testified at trial that he often acted as driver for appellant on her errands. Late on the night of October 3, 2006, appellant had asked him to transport her and her husband Andre to the victim's residence for "a strip call." Wright dropped them in front of the victim's home, and appellant called Wright one hour later to pick them up. Appellant and Andre were waiting outside when he arrived, whereupon Andre began loading "stuff" into Wright's car that appellant

said belonged to her. Wright drove them to their apartment, then drove Andre back to the victim's house to retrieve a computer monitor.

Andre gave detailed testimony concerning the circumstances on the night the victim died. He testified that appellant arranged for Wright to drive them to see the victim at his apartment on the night of his death to "pick up some money." According to Andre, appellant was very angry with the victim, and told Andre the victim should "lose his life" for things said about her on the internet. Before she went into the victim's house, appellant told Andre to hide outside and knock on the door in fifteen minutes under the pretense that he was her brother. Andre did so, and the victim allowed him into the home.

Andre testified that after several hours spent drinking and talking appellant suddenly attacked the victim from behind. Andre claimed that appellant is very strong and that she choked the victim unconscious without assistance and without Andre's foreknowledge. Appellant then demanded that Andre help her to move the victim to a bed where she cut his throat with a box cutter. Appellant and the victim struggled, but he eventually stopped moving. Appellant then told Andre to help move the victim to the floor. There, Andre testified, she throttled the victim with a belt, kicked him in the head, bound his hands, and directed that Andre bind his feet. Appellant then began removing the victim's property.

Testifying on her own behalf, appellant denied any involvement in the victim's death, but admitted to having lied to the police regarding the use of the victim's credit card. She also admitted that she was at the victim's home on the night he died, but claimed that Wright's account was not accurate. She insisted that she was only at the victim's home for twenty to thirty minutes and that Andre had not been with her. She claimed, too, that the victim's property discovered in her home were gifts and that she and the victim had been involved in a quasi-romantic relationship.

The trial court found Andre's testimony "ridiculous" in part, but rejected appellant's testimony almost in its entirety. At the end of all evidence, the trial court found that while appellant may not have actually killed the victim, she was present and involved beyond the degree necessary for culpability as a principal in the second degree. Appellant was convicted as charged, and this appeal followed.

## II. ANALYSIS

"'The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.'" Id. (quoting Martin, 4 Va. App. at 443, 358 S.E.2d at 418). We will not overturn a verdict on appeal unless no "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

"A conviction for robbery requires proof beyond a reasonable doubt that the defendant alone, or acting in concert with others, took property from the victim by force, threats, or violence, and that the intent to steal co-existed with the act of force." Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). Second-degree murder does not require a specific intent to kill. See Rhodes v. Commonwealth, 238 Va. 480, 486, 384 S.E.2d 95, 98 (1989). The Commonwealth must merely prove "'a malicious purpose to do the deceased a serious personal injury or hurt.'" Id. (quoting Dock's Case, 62 Va. (21 Gratt.) 909, 913 (1872)). "A principal in the second degree is one who is not only present at a crime's commission, but also commits some overt act, such as inciting, encouraging, advising, or assisting in the commission of the crime, or shares the perpetrator's criminal intent." Hampton v. Commonwealth, 32 Va. App. 644, 648, 529 S.E.2d 843, 845 (2000).

- 4 -

As a threshold premise to her contention that the Commonwealth's evidence was insufficient to convict her of the charged offenses, appellant argues that, the trial court having explicitly found the husband's testimony to be incredible, it erred in relying on any part thereof. She concludes that the trial court should have accepted her testimony instead. We disagree.

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). "In assessing witness credibility, the fact finder may accept the parts of a witness' testimony it finds believable and reject other parts as implausible." Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (*en banc*). Likewise, the trier of fact is entitled to disbelieve a defendant's self-serving testimony and conclude that she is lying to conceal her guilt. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998). We will reject the determinations of the trial court with regard to witness credibility and evidentiary weight only when plainly wrong or without supporting evidence. See Mercer v. Commonwealth, 259 Va. 235, 243, 523 S.E.2d 213, 217 (2000).

Here, Wright's testimony corroborated that portion of Andre's testimony showing that appellant arranged for Wright to transport Andre and appellant to and from the victim's house on the night he was killed, that Andre and appellant gained entry to the victim's home because of appellant's relationship with the victim, that appellant was actively involved in the removal of the victim's property, and that she was present when the victim died. Appellant admitted that she had been present at some point that night, and admitted that she lied under police questioning. The victim had glitter on his face and chest, and property that had been removed from his home around the time of his death was discovered in appellant's home and in her purse. Having viewed the evidence in its entirety under the standard of review we must employ, we

cannot say that the trial court's rejection of appellant's testimony and its partial acceptance of Andre's testimony were plainly wrong.

From all the evidence it found credible, the trial court could reasonably conclude that appellant was present during and assisted in the victim's death and that she shared the requisite criminal intent. The trial court could also conclude that appellant intended to take the victim's property at the time of the violence which caused his death. Thus finding no error, we affirm the judgment of the trial court and appellant's convictions.

<u>Affirmed.</u>