COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judge McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


JONATHAN PETER GRATTAN, II

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1614-07-3                 CHIEF JUDGE WALTER S. FELTON, JR.
                                                        NOVEMBER 25, 2008
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                                John J. McGrath, Jr., Judge

            Jonathan Shapiro (Peter D. Greenspun; Greenspun, Shapiro, Davis &
            Leary, P.C., on briefs), for appellant.

            Jennifer C. Williamson, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Following a bench trial, the Circuit Court of Rockingham County ("trial court")

convicted Jonathan Peter Grattan, II ("appellant") of the following offenses:  first-degree murder,

in violation of Code § 18.2-32; six charges of attempted capital murder of a law-enforcement

officer, in violation of Code §§ 18.2-25 and 18.2-31(6); aggravated malicious wounding, in

violation of Code § 18.2-51.2; and eight charges of the use of a firearm in the commission of a

felony, in violation of Code § 18.2-53.1.

        On appeal, appellant contends the trial court erred in finding that he was competent to stand

trial.  He also contends the trial court erred by barring him, pursuant to Code § 19.2-168.1(B), from

introducing his expert mental health evidence regarding his sanity at the time of the offenses in

question.  We conclude the trial court did not err in these judgments, and affirm appellant's

convictions.

        _____

            * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

As the parties are familiar with the record below, we cite only those facts necessary to the disposition of the appeal.

## I. Background

On April 30, 2006, appellant shot his neighbors, Bill and Carol Gardner, multiple times with an "AK47 styled" rifle as they drove past the house where he resided with his grandmother. Each victim sustained multiple gunshot wounds. Carol Gardner died from her wounds. Bill Gardner recovered from his multiple wounds, albeit with significant residual permanent disability. Immediately following this attack, appellant retreated to the basement of the residence. He engaged in a standoff with law-enforcement officers lasting several hours. A police officer at the scene described appellant's actions to be "tactically brilliant."

The record reflects a strained relationship between appellant and the Gardners, primarily related to appellant's use of a motorcycle on a gravel road that led to the Gardners' house. Prior to his brutal attack on the Gardners, appellant complained that Bill Gardner was attempting to kill him with "gamma rays." Following that complaint, appellant was involuntarily committed to a psychiatric facility, where he was diagnosed as suffering from "[a]cute paranoid psychosis probably secondary to methamphetamine abuse." His attending physician determined that he did not suffer from an "underlying psychosis." After four days, appellant was released from that facility.

Prior to trial, appellant notified the Commonwealth and the trial court that he intended to put his sanity at the time of the offenses into issue at trial and that he intended to present expert testimony in support of that defense. Pursuant to Code § 19.2-168.1(A), the trial court appointed a mental health expert to evaluate appellant's claim of insanity at the time of the offenses. It also appointed a clinical psychologist to evaluate appellant's competency to stand trial pursuant to Code § 19.2-169.1.

In January 2007, the trial court advised appellant of his duty, pursuant to Code § 19.2-168.1(A), to cooperate with the Commonwealth's mental health expert, and further advised him regarding the possible sanctions for non-compliance pursuant to Code § 19.2-168.1(B). Despite this warning, appellant refused to cooperate with either the Commonwealth's mental health expert or the court-appointed competency expert. On the other hand, he submitted to a five-hour examination by his retained mental health expert. After appellant's refusal to meet with the Commonwealth's expert, the trial court again expressly warned him of the sanctions it would impose if he failed to cooperate with the Commonwealth's mental health expert. Following this admonition, appellant submitted to an examination by the court-appointed competency expert. That examination was conducted in the courtroom and lasted approximately one hour and fifteen minutes. It was videotaped.

On February 2, 2007, following a hearing during which it reviewed the videotaped competency examination, the trial court found appellant competent to stand trial. During the competency hearing, the Commonwealth informed the trial court that appellant continued to refuse to cooperate with its mental health expert as to his sanity at the time of the offenses. In appellant's presence in open court, the trial court instructed the Commonwealth to have its expert again attempt to meet with appellant. It stated that it would review the issue of appellant's compliance on the scheduled trial date to determine whether, "under the statute[,] [appellant's refusal to cooperate] is tantamount to a functional refusal to submit [to evaluation] and then the Court will have to determine which sanctions, if any, it will impose."

Appellant continued his refusal to meet with the Commonwealth's mental health expert. On February 5, immediately prior to the commencement of appellant's trial, the trial court heard the Commonwealth's motion to bar appellant's expert testimony concerning his sanity at the

time of the offenses. Following that hearing, the trial court granted the Commonwealth's motion, stating:

> [u]nder [Code] § 19.2-168.1([B]) the Court clearly has discretion both to exclude the testimony of the defendant's expert witnesses on psychiatry and also has authority to permit such testimony and then to instruct the jury that he has failed to cooperate and to meet with the Commonwealth's appointed psychiatric experts. Under all the circumstances of this case the Court believes that the only fair and reasonable alternative is to exclude the expert testimony of the defendant on the issue of his insanity at the time of the offense . . . .

Immediately after ruling on the Commonwealth's motion, the trial court arraigned appellant on each of the indictments. Appellant, with the Commonwealth and the trial court concurring, waived his right to a trial by jury.

The Commonwealth proffered, in a detailed summary, evidence sufficient to prove each of the offenses charged. Appellant also proffered evidence, in part factually inconsistent with the Commonwealth's proffered evidence, but stipulated that the Commonwealth's evidence was credible. Based on the proffered summaries of the evidence, the trial court found appellant guilty of each of the offenses charged.

Following the guilt phase of the trial, the trial court ordered a pre-sentence report to be prepared and set a date for the sentencing hearing. Appellant proffered a summary of his expert testimony concerning his sanity at the time of the offenses, the evidence excluded by the trial court pursuant to Code § 19.2-168.1(B).

Following the sentencing hearing, the trial court sentenced appellant to incarceration for life, plus an additional seventy-four years.

## II. Analysis

### A. Appellant's Competency to Stand Trial

Appellant contends the trial court erred in finding that he was competent to stand trial.

> Under Code § 19.2-169.1(E), the party alleging that a criminal defendant is incompetent to participate in h[is] defense bears the burden of proof on this issue by a preponderance of the evidence. The determination whether a defendant is competent is based on whether the defendant lacks substantial capacity to understand the criminal proceedings against h[im] or is incapable of assisting counsel in h[is] defense. The United States Supreme Court has explained in greater detail that the standard for competency to stand trial "is whether the defendant has 'sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against [him].'" Godinez v. Moran, 509 U.S. 389, 396 (1993) (quoting Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam)).
>
> The determination whether a criminal defendant is competent to stand trial is a question of fact that will not be disturbed on appeal unless plainly wrong. In conducting our review, we consider the evidence in the light most favorable to the Commonwealth, the prevailing party on this issue in the [trial] court.

Orndorff v. Commonwealth, 271 Va. 486, 499-500, 628 S.E.2d 344, 351-52 (2006) (citations omitted).

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony," including that of an expert witness. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*) (citations omitted). The resolution of "'[c]onflicting expert opinions constitute[s] a question of fact . . . . '" Mercer v. Commonwealth, 259 Va. 235, 242, 523 S.E.2d 213, 217 (2000) (quoting McCaskey v. Patrick Henry Hospital, 225 Va. 413, 415, 304 S.E.2d 1, 2 (1983)). "The factual determinations of the trial court, like those of the jury, are binding on this Court, and we will reverse such findings 'only if they are plainly wrong or without evidence to support them.'" Mercer, 259 Va. at 243, 523 S.E.2d at 217 (quoting Richardson v. Richardson, 242 Va. 242, 246, 409 S.E.2d 148, 151 (1991)).

At the competency hearing, the trial court heard conflicting expert testimony concerning appellant's competency to stand trial. Appellant's competency expert testified that appellant was

schizophrenic and incompetent to stand trial. The Commonwealth's court-appointed competency expert testified that appellant had the present capacity to comprehend and appreciate the severity of the charges against him, to communicate with and give relevant case information to his attorneys, and to understand the adversarial nature of the criminal proceedings. The Commonwealth's expert based his opinion, that appellant was competent to stand trial, in part on his one hour and fifteen minute examination of appellant. The trial court reviewed the videotaped recording of that examination during the competency hearing.

In addition to the expert testimony, lay witness testimony established that, while appellant was incarcerated pending trial, he demonstrated an understanding of jail procedures and how those procedures applied to him. Evidence showed that during an administrative hearing related to a "jail charge" against appellant for assaulting another inmate, appellant contended that he acted in self-defense and requested that a witness be permitted to testify in support of that defense. On another occasion a jail deputy, after smelling cigarette smoke coming from appellant's cell, evidence suggesting that appellant was smoking in his cell in violation of jail policies, saw appellant flush cigarette butts down the toilet before the deputy could collect them as evidence. After he was moved to a different cell within the jail, appellant informed more than one jail deputy that his purchases from the jail canteen and his selections from the jail library, including law books,[1] should be delivered to his new cell.

When appellant was asked by a fellow inmate why he exhibited strange behavior "one minute . . . but the next minute he wouldn't," he responded that he acted in that way to strengthen his claim of insanity at the time of the offenses, which he stated was his "only chance" to "get[] less than twenty years," indicating appellant understood the nature and severity

---

[1] Evidence at appellant's competency hearing established that he selected books from the jail library, including the Code of Virginia, the law of evidence, and federal habeas corpus practice and procedure.

of the charges against him and that he understood the strategic importance of his insanity defense.

We conclude that the record on appeal contains credible expert and lay evidence sufficient to support the factual determination by the trial court that appellant was competent to stand trial. In reaching that conclusion, the trial court found that appellant understood the nature of the proceedings against him, that he had substantial capacity to meaningfully participate in his defense should he have chosen to do so, and that he was capable of understanding the consequences of his failure to cooperate with the Commonwealth's mental health expert's efforts to evaluate him. From this record, we find that the trial court was not plainly wrong in finding appellant competent to stand trial.

### B. Exclusion of Expert Testimony – Abuse of Discretion

Appellant also contends the trial court erred in barring him from presenting expert mental health evidence on the issue of his sanity at the time of the offenses. He argues that his "undisputed mental illness" precluded him from cooperating with the Commonwealth's expert and that the trial court should have imposed a sanction less severe than the absolute bar of his expert mental health testimony under Code § 19.2-168.1(B), especially considering evidence that, on some occasions, he refused to cooperate with his own mental health experts as well.

On appeal, we review a trial court's decision whether to exclude appellant's expert mental health evidence pursuant to Code § 19.2-168.1(B) for an abuse of discretion, and will not disturb that ruling on appeal unless it appears from the record that the ruling was plainly wrong or without evidence to support it. See Muhammad v. Commonwealth, 269 Va. 451, 507-08, 619 S.E.2d 16, 48 (2005) (trial court did not abuse its discretion in excluding, at sentencing phase of accused's capital murder trial, accused's expert mental health evidence when it found accused intentionally refused to

cooperate with the Commonwealth's mental health evaluator as required by Code § 19.2-264.3:1(F)(2)), cert. denied, 547 U.S. 1136 (2006).

Appellant also argues that, in the absence of evidence that his refusal to cooperate was "motivated at all by a knowing, strategic desire to aid his case, or by a willful desire to obstruct justice," the trial court should have permitted him to present his expert mental health evidence as to his sanity, accompanied by a cautionary instruction from the trial court informing a jury that he refused to cooperate with the Commonwealth's expert.

Code § 19.2-168.1(B) provides that

> [i]f the court finds, after hearing evidence presented by the parties, that the defendant has refused to cooperate with an evaluation requested by the Commonwealth, it may admit evidence of such refusal or, in the discretion of the court, bar the defendant from presenting expert psychiatric or psychological evidence at trial on the issue of his sanity at the time of the offense.

The plain language of Code § 19.2-168.1(B) grants the trial court discretion to determine the appropriate sanction to impose, if any, when an accused, determined to be competent to stand trial, fails to comply with the requirements of Code § 19.2-168.1(A).

Here, the trial court found that appellant was competent to stand trial, and had the present capacity to comprehend and appreciate the severity of the charges against him, to communicate with and give relevant case information to his attorneys, and to understand the adversarial nature of the criminal proceedings.

Appellant's fellow inmate testified that appellant admitted that he exhibited strange behavior while in jail in order to support his insanity defense, which he described as his "only chance" to "get[] less than twenty years." Additionally, appellant informed the trial court in open court that he understood his refusal to cooperate with the Commonwealth's mental health expert could result in the exclusion of his own expert mental health evidence. From the record on appeal, we conclude that the trial court was not plainly wrong in finding that any mental illness asserted by appellant to

exist did not preclude him from cooperating with the Commonwealth's mental health expert to evaluate him, and understanding the consequences of his failure to do so.

On this record, we conclude that the trial court acted within its discretion when it banned appellant from presenting at trial his expert mental health evidence related to his sanity at the time of the offenses.

### C. Exclusion of Expert Testimony – Constitutional Violation

Appellant also contends that "the trial court's preclusion of all defense expert testimony without any consideration of intermediary sanctions was a violation of [his] right to present evidence, under both" the Sixth Amendment to the United States Constitution and Article I, Section 8 of the Virginia Constitution.

However, appellant failed to present that argument to the trial court during the trial proceedings. "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18; see Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). The purpose of Rule 5A:18 is "to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals." Andrews v. Commonwealth, 37 Va. App. 479, 493, 559 S.E.2d 401, 408 (2002).

Appellant, however, requests that we invoke the "ends of justice" exception to Rule 5A:18. However, "[t]he ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." Copeland v. Commonwealth, 42 Va. App. 424, 442, 592 S.E.2d 391, 399 (2004) (citing Michaels v. Commonwealth, 32 Va. App. 601, 608, 529 S.E.2d 822, 826 (2000)). "In order to avail oneself of the exception, a[n] [appellant] must affirmatively show that a

miscarriage of justice has occurred, not that a miscarriage might have occurred." Brown v. Commonwealth, 8 Va. App. 126, 132, 380 S.E.2d 8, 11 (1989) (citing Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987)). Such a showing "requires proof of an error that was 'clear, substantial and material.'" Copeland, 42 Va. App. at 442, 592 S.E.2d at 399 (quoting Brown, 8 Va. App. at 132, 380 S.E.2d at 11). "'In examining a case for miscarriage of justice, we . . . determine whether the record contains affirmative evidence of innocence or lack of a criminal offense.'" Tooke v. Commonwealth, 47 Va. App. 759, 765, 627 S.E.2d 533, 536 (2006) (quoting Lewis v. Commonwealth, 43 Va. App. 126, 134, 596 S.E.2d 542, 546 (2004), rev'd on other grounds, 269 Va. 209, 608 S.E.2d 907 (2005)).

Our examination of the record before us does not show that any miscarriage of justice has occurred. Accordingly, "there is no basis upon which to apply the ends of justice exception to this case." Copeland, 42 Va. App. at 442, 592 S.E.2d at 399. Accordingly, we will not consider appellant's constitutional argument for the first time on appeal. Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

## III. Conclusion

We conclude the trial court did not err in finding that appellant was competent to stand trial. We also conclude the trial court did not err in excluding, pursuant to Code § 19.2-168.1(B), his expert mental health evidence regarding his sanity at the time of the offenses. Accordingly, we affirm appellant's convictions.

Affirmed.